WILLIAM L. GLORIEUX AND HALSEY T. TICHENOR, RESPONDENTS, v. CHARLES F. LIGHTHIPE ET AL., APPELLANTS.

Submitted July 6, 1915—Decided November 15, 1915.

The word "purchasers" in section 53 of the act respecting conveyances (*Comp. Stat., p.* 1552) means purchasers of the same land and not purchasers from the same grantor. A purchaser of other land from the same grantor is not charged with notice of building restrictions contained in an earlier deed not in his chain of title.

On appeal from the Supreme Court.

For the defendants-appellants, *Charles F. Lighthipe.*

For the plaintiffs-respondents, *Lehlbach & Johnson.*

The opinion of the court was delivered by

Swayze, J. This is an action on covenants for title contained in a deed from the defendants, heirs of Charles A. Lighthipe, to William L. Glorieux. The breach alleged is the existence of an encumbrance in the form of building restrictions. This is said to have been created by a covenant in a deed for adjoining land made by Charles A. Lighthipe, the

ancestor, to one Marsh, in which Lighthipe covenanted that he would not convey the land subsequently conveyed by his heirs to Glorieux, unless the grantee should enter into a covenant of the same nature, purport and effect as that made by Marsh, which should be inserted in the deed. Lighthipe's heirs conveyed to Glorieux without inserting the covenant. Glorieux himself testified that he had no actual knowledge of any restrictions upon the land conveyed to him, and his counsel in argument makes the same concession. Since the very foundation of an equitable servitude is notice to the purchaser of the servient tenement, the plaintiff's case fails unless the record of the deed to Marsh constitutes statutory notice. If the Marsh deed were in the plaintiff's chain of title, the case would present no difficulty. It is not, and we are confronted with the question of the effect as notice of a prior recorded deed by the same grantor but for other lands. Prior to the act of 1883 (*Pamph. L., p.* 215; *Gen. Stat., p.* 882, *pl.* 143–145), the effect of the record as notice was determined by principles of equity and was limited to deeds in the chain of title of the person sought to be charged. *Losey* v. *Simpson,* 11 *N. J. Eq.* 246; *H. C. Tack Co.* v. *Ayers,* 56 *Id.* 56; *Chandley* v. *Robinson,* 75 *Atl. Rep.* 180; *Murray* v. *Ballou,* 1 *Johns. Ch. (N. Y.)* 566; *Meacham* v. *Blaess,* 104 *N. W. Rep. (Mich.)* 579; see also 18 *Ann. Cas.* 17. Such also was the rule in other jurisdictions. 39 *Cyc.* 1719, 1728. And the rule was so stated in this court in *Mitchell* v. *D'Olier,* 68 *N. J. L.* 375, 384, although the present question was not necessarily involved in the decision. The reason for imputing notice, as stated by Chief Justice Beasley, speaking for this court in *Brewer* v. *Marshall,* 19 *N. J. Eq.* 537, 541, excludes that imputation where the deed relied on is not in the chain of title of the party to be charged. The court said: "The law conclusively charges him with such information, *because the deed which contains this restrictive agreement, constitutes one of the muniments of his own title."* The rule is recognized by the text-writers. *Story Eq. Jur.,* § 400; *Pom. Eq. Jur.,* § 658; *note to LeNeve* v. *LeNeve,* 2 *L. C. Eq. (4th ed.)* 190.

The act of 1883 provided that the record should become and be forthwith notice to all persons of the execution thereof. This act was repealed in 1898 (*Pamph. L., p.* 713) and cannot affect the present case since Glorieux did not take title until 1910. The case turns upon the construction of the act respecting conveyances of 1898 and the supplement of 1903 (*Comp. Stat., p.* 1552, *pl.* 53, and *Comp. Stat., p.* 1556, *pl.* 57a–57c). The act of 1903 adds nothing material to the present case. It seems to have been intended to permit the record of certain instruments not mentioned in the twenty-first section of the act respecting conveyances, and may have been suggested by the difficulty that arose in *Lembeck & Betz Eagle Brewing Co.* v. *Kelly,* 63 *N. J. Eq.* 401. The act of 1903 was not necessary to authorize the record of the deed from Lighthipe to Marsh since that was clearly authorized by section 21. The act added nothing to the effect of the record as notice, since by virtue of section 53, the record was notice not only of the execution of the deed but of the contents thereof. The only effect of the act of 1903 was to extend the provisions of section 53 to other instruments. The case turns therefore upon the construction of section 53. The language of that section is narrower and more limited than that in the act of 1883. Where the earlier act made the record notice to all persons, the act of 1898 made it notice only to subsequent judgment creditors, purchasers, and mortgagees. The words material to the present case are "subsequent purchasers." Unless Glorieux was a "subsequent purchaser," the statute did not make the record notice as to him. The question otherwise stated is whether "subsequent purchaser" means subsequent purchaser from the same grantor, or subsequent purchaser of the same land. The more natural meaning is subsequent purchaser of the same land. In most cases it is probable that the grantor owns no other land. Even where he holds other tracts, we must logically hold either that the statutory notice applies only to the particular land described in the deed or affects all other land owned by the grantor at least in the same county, whether in the same or different municipalities, whether on the same street

or different streets. The limitation to adjoining land sug-
gested by the learned Vice Chancellor in *Howland* v. *Andrus,*
80 *N. J. Eq.* 276 (at *p.* 282), is not suggested by any lan-
guage in the statute and would lead to an anomalous situation.
It would charge with notice the purchaser of an adjoining
lot, but not the purchaser of the next lot but one, on the
same large tract.

The construction we adopt is in line with the history and
purpose of the registry acts and the doctrine of constructive
or statutory notice founded thereon. The purpose was to
protect purchasers of land which had already been conveyed
by an unrecorded deed by making that deed void as to them.
This purpose did not require that the failure to record should
make the deed void as to subsequent purchasers of other land.
The words "subsequent purchaser" occur in section 54 as well
as in section 53; in fact their use in connection with the
other language of section 54 antedates as matter of legis-
lative history their use in section 53; the former use goes
back to the act of 1799 (*Pat. L., p.* 399); the latter to 1898
only. The words ought to have the same construction in
both sections. To attribute to them in section 54 the mean-
ing of subsequent purchasers from the same grantor would
lead to an absurdity. Section 54 provides that an unrecorded
deed shall be void as to a subsequent purchaser in good faith
for value, and if subsequent purchaser means a purchaser
from the same grantor but of different land, then the owner
of land by an unrecorded deed would be unable to sue for
a trespass if the trespasser happened to be a subsequent pur-
chaser from the same grantor. This is obviously absurd and
it is absurd because it extends the meaning of the words
beyond the necessity of the mischief to be cured. Yet we
must go to that extent unless we hold that subsequent pur-
chaser in section 54 means only subsequent purchaser of the
land. If we give the words that meaning in section 54, we
must give them the same meaning in section 53. This is
demonstrated by a consideration of the American doctrine of
notice by the record. That doctrine arose by implication
from the statutory provision (now found in section 54)

making an unrecorded deed void as to subsequent purchasers. The fact that a deed was void as to a subsequent purchaser made it necessary for a careful purchaser to see that all deeds in his chain of title were recorded. The courts would not impute to him a failure to do what he ought to do, but assumed that he had done his duty. If he had, he must have found all the recorded deeds in his chain of title and might properly be charged with notice thereof and of their contents. *Pom. Eq.*, § 649; *Losey* v. *Simpson,* 11 *N. J. Eq.* 246. There was no express statutory provision making the record notice until 1883, and if that act did in fact broaden the scope of the notice (as to which we express no opinion), it was repealed in 1898. In that year the legislature, in enacting section 53 limited the notice to the same class of persons to whom it had been limited by construction prior to 1883.

The reason of the legislation and the argument *ab inconvenienti* point to the same result. The record is held to be constructive notice because a man is bound to examine his own title or take the risk of not doing so. A purchaser may well be held bound to examine or neglect at his peril, the record of the conveyances under which he claims, but it would impose an intolerable burden to compel him to examine all conveyances made by every one in his chain of title. The case differs from the conveyance of an easement or any interest that lies in grant. A grant takes effect regardless of notice; an equitable servitude is the creature of equity alone and depends entirely on the existence of notice. Confessedly, Lighthipe's covenant to insert restrictions in subsequent deeds was not enforceable at law against Glorieux. It clearly was not a grant.

The result is that the plaintiff failed to prove that the land conveyed to Glorieux was burdened with the restrictions contained in the deed from Lighthipe to Marsh, and the nonsuit should have been granted for that reason.

The judgment must be reversed to the end that a *venire de novo* may be awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ.   16.