ATLANTIC COUNTY CIRCUIT COURT.

WILLIAM ERNST KENNEDY AND MARIE ERNST KEN-
NEDY, PLAINTIFFS, v. ISLAND DEVELOPMENT COM-
PANY, DEFENDANT.

Decided August 24, 1931.

For the plaintiffs, *Endicott & Endicott.*

For the defendant, *Thompson & Hanstein.*

SOOY, C. C. J. This is an ejectment suit submitted on stipulation for trial before me without a jury.

It is stipulated, *inter alia,* that both plaintiffs' and defendant's title originated in the Brigantine Improvement Company and that "anything prior thereto shall be taken and deemed as not necessary to the consideration of this case."

It appears that the Brigantine Improvement Company was a corporation of New Jersey; that one William M. Kennedy was a stockholder; that on October 15th, 1892, the Brigantine Improvement Company conveyed the *locus in quo* to said Kennedy and that the conveyance was not recorded until January 25th, 1927; that the Brigantine Improvement Company was dissolved in June of 1892; that on June

16th of 1902, the Brigantine Improvement Company, by its trustees, conveyed to the Brigantine Company; that subsequently, by reason of a sale under a judgment, title came to one Heald and that the title thus secured was conveyed to the present defendant by deed dated October 20th, 1923, and that the defendant is still in possession.

It is also stipulated that the Brigantine Improvement Company executed a mortgage to the Provident Life and Trust Company of Philadelphia, on May 4th, 1888, which mortgage was forthwith recorded, and this stipulation, known as number 6, concludes "the description in that mortgage conveyed, together with other land, all the lots in controversy."

Going back to the deeds from the Brigantine Improvement Company to the Brigantine Company we find two—one directly from the company, and a confirmatory deed from the trustees on dissolution. The description is the same in both deeds and conveys three separate tracts or parcels:

1. "All the land situate on the upper or northeasterly end of Brigantine Beach northeast of land formerly owned by Ocean Island and Brigantine Land and Improvement Company *and not heretofore allotted and set off to its stockholders.*"

2. "All the land southwesterly of the land formerly belonging to the Ocean Island and Brigantine Land and Improvement Company which was described in a mortgage given by the Brigantine Improvement Company to the Provident Life and Trust Company of Philadelphia, dated May 4th, 1888, and recorded in the clerk's office of Atlantic county in book No. 21 of mortgages, folio 481," &c.

3. "All the residue and remainder of the lands of the Brigantine Improvement Company wheresoever situate, *not heretofore sold or allotted to* its stockholders including the accretions on the beach front and meadows *not heretofore* allotted, situate on Brigantine Beach aforesaid and the township of Galloway."

It is quite evident that the grantees under these deeds was charged with the knowledge that tract No. 1 was for land "not heretofore allotted and set off to its stockholders" (of which stockholders to whom some of the land had been

allotted was Kennedy); that tract No. 2 was land described in the mortgage given to the Provident Life and Trust Company, and that, in order to discover its boundaries, a reference to that mortgage would be necessary; that tract No. 2 included land of any kind belonging to the Brigantine Improvement Company "not heretofore sold or allotted to its stockholders."

With particular reference to tract No. 2, the grantee's inspection of the record would have disclosed the mortgage, and a search of the status of that mortgage would have disclosed that the Provident Company had released to Kennedy the *locus in quo* by a release of mortgage bearing date December 31st, 1892, and recorded January 4th, 1893.

It is true that an examination of the record title, as that record is disclosed merely by deeds, would not have disclosed a conveyance to Kennedy, but it would have unearthed a release of mortgage to Kennedy as to the lots in suit and the recitals in that release of mortgage would have disclosed that "the Brigantine Improvement Company, by divers conveyances, had granted unto the following-named persons," *inter alia,* "unto William M. Kennedy, the following-described lots," including the *locus in quo.*

It is quite true that it may be said that this release is not one of the documents strictly in the chain of title under which defendant claims, but it does not seem to me that defendant may overcome the legal effect of the notice thus afforded it, especially in view of the character of the description in the grants of the Brigantine Improvement Company to the Brigantine Company. I recognize the rule to be that laid down by the Court of Errors and Appeals in *Bock* v. *Koch,* 99 *N. J. Eq.* 359.

In the ordinary case, as I have said, where the description in a deed is by metes and bounds and nothing at all appears to even suggest an inquiry or search outside of the direct chain of title, it may well be that the defendant would be excused from a failure to take notice of an instrument outside of the direct chain of title, but here the grantee was, in effect, told that the conveyance was of land (a) "formerly owned and not heretofore allotted," (b) of lands described in

a certain recorded mortgage, (c) of lands not heretofore allotted to a particular class of persons, "stockholders," and not sold.

It is true that the failure of Kennedy to record his deed would render the conveyance void as to a *bona fide* purchaser of the land for a valuable consideration, not having notice of the prior unrecorded deed. It is also true that the presumption is that such a grantee took title without notice, putting the burden of proof of notice upon the plaintiff, but it is also true that the Brigantine Company had "clews" upon which to work and which were so easily followed that to have failed to do so charges that company with its own neglect. This reasoning seems to me to be in accord with the opinion of the late Vice-Chancellor Pitney in the case of *McCrea* v. *Newman*, 46 *N. J. Eq.* 474:

"The real force of the statement or recital in such cases is to give to the purchaser notice of an actually existing encumbrance, and the principle upon which recitals of this meagre and incomplete sort are held to be notice of such encumbrance, is that they are sufficient to put the purchaser upon inquiry, and that he is chargeable with such facts, and such only as might be ascertained by a reasonable inquiry— "it must give him a clew."

I find that the failure to record the Kennedy deed did not constitute defendant's predecessor in title a grantee without notice, but that the Brigantine Company took from the Brigantine Improvement Company with notice of the conveyance to Kennedy.

It is also insisted by plaintiff that, outside the record, the Brigantine Company was put on notice by the recitals in its deed and that an investigation of the minutes of the Brigantine Improvement Company would have disclosed the stockholders to whom conveyances had been made. I am inclined to think not, but that the proper place to investigate was the "clew" thus afforded was the record of title and that a "reasonable inquiry" at that source would have given the information.

Defendants say that plaintiffs may not succeed because their title depends on an exemplification of the will of Wil-

liam M. Kennedy from the probate court in Pennsylvania, which exemplification has not been filed in New Jersey. The answer to this contention is found in *Maas* v. *Leblanc,* 101 *N. J. Eq.* 167, wherein it is held that the filing of the exemplified copy of the will is merely evidence of the power to make the conveyance, but that the power to convey is derived from the will itself and not by any authority conferred by the act.

The next attack on the Kennedy title is that the deed from the Brigantine Improvement Company to Mr. Kennedy is void because it was executed by the president and secretary of that company, subsequent to the dissolution thereof, instead of having been executed by "trustees."

In view of the Corporation act as it stood in 1892, *i. e.,* the act of 1875, I think the conveyance by the president and secretary sufficient. By the act of 1875 these officers were constituted trustees for the purpose of "to dispose of and convey their property," and the minutes of the meetings of the stockholders and directors of the company authorized the conveyance and, in addition, such conveyances were confirmed by an act of the legislature of 1899, chapter 147.

Defendants next urge as a bar to plaintiffs' recovery, chapter 214 of the laws of 1928, which provides generally that where a deed conveys land by a general description, such as the deed to the Brigantine Company, the reservation or exception of lots "which may have been theretofore sold shall be void against subsequent *bona fide* purchasers," &c., "not having any other notice of any conveyance made by such prior owner," &c.

Plaintiffs urge that this act is unconstitutional, but I do not have to pass on this question as I already have decided that the predecessors in title did have notice of the sale of the lots in question to plaintiffs' predecessor in title, *i. e.,* a search of the records would have disclosed that fact.

It is next urged by defendant that any right plaintiffs may have had in the premises have been lost by adverse possession. This result may not be reached under the stipulation which is, merely, "the Island Development Company is now in possession."

Judgment may be entered in favor of plaintiffs.