109 N.J. Super. 523 (1970)
264 A.2d 82
GARDEN OF MEMORIES, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
FOREST LAWN MEMORIAL PARK ASSOCIATION, A CORPORATION OF NEW JERSEY, ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1969.
Decided April 15, 1970.
*526 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Joseph Gordon argued the cause for appellant (Messrs. Gordon & Kanengiser, attorneys).
Mr. Sam Weiss argued the cause for respondent Forest Lawn Memorial Park Association (Messrs. Sandles & Sandles, attorneys).
A statement in lieu of brief was filed by Mr. Arthur J. Sills, Attorney General of New Jersey (Mr. Kenneth M. Olex, Deputy Attorney General, of counsel).
The opinion of the court was delivered by CONFORD, P.J.A.D.
Plaintiff Garden of Memories, Inc. ("Garden of Memories") appeals from a judgment of the Chancery Division dismissing "with prejudice" its complaint filed under N.J.S.A. 2A:62-1 et seq. to quiet title to 30.786 acres of vacant land in North Brunswick.
The complaint asserted that plaintiff's title to the land was "denied or disputed" by defendant Forest Lawn Memorial Park Association ("Forest Lawn"), and it contained the *527 recitals, jurisdictional under the statute, of peaceable possession in plaintiff and absense of pending action to enforce or test the validity of defendant's title or claim. While the complaint also recited that both corporations were organized as cemetery associations pursuant to N.J.S.A. 8:1-1 et seq., there was no proof thereof as to plaintiff corporation, and the contrary was asserted by plaintiff on a motion (which was denied) to "present new evidence" and for amended findings and conclusions. Concededly, Forest Lawn was organized under the cemetery association act.
In its filed opinion the trial court essentially decided that plaintiff, although holder of record title to the property in question since April 15, 1952, had taken its interest with constructive notice from the public title records of a prior interest of Forest Lawn as contract vendee of the property under an unrecorded contract executed June 21, 1946, some of the terms of which were reflected by recitals in certain recorded deeds and a recorded mortgage hereinafter described.
At the trial the parties stipulated in evidence recorded title instruments which may be summarized as follows.[1]
Both parties claim title to the property in question through common grantors, Arthur Jarett and associates. Jarett acquired title to 39.79 acres, including the land in controversy, together with "all cemetery permits affecting" the entire parcel on July 9, 1946. On that same day, Jarett and his wife declared a trust as to three undivided one-fourths of the 39.79 acres on behalf of three associates, each of whom had contributed one-fourth of the purchase price.
Jarett, his wife and associates conveyed 4.003 acres of the 39.79 acres to Forest Lawn on August 8, 1946. Two other deeds from the same grantors to the same grantee conveyed another 1.5 acres and 3.5 acres, respectively, of the 39.79 acres on October 22, 1947. Moreover, each of the deeds contained (verbatim or substantially) the following clause:
*528 "This deed is given as a partial conveyance of a tract of land immediately adjoining [sic][2] the within described premises and containing 39.79 acres of land and the balance of said lands has this day been conveyed to the party of the second part by the party of the first part, but which deed of conveyance is held in escrow by Isidore M. Dubrow, Esq., attorney for the party of the first part and which deed will be given to the party of the second part upon full payment of a mortgage in the sum of $30,000.00 this day given by the party of the second part to the party of the first part and it is also represented and warranted that at the time of the delivery of the said deed held in escrow, the permit for the use of said lands for cemetery purposes will be good, and valid and in full force and effect, provided that the said permit shall not be invalidated by any act of the party of the second part."
No such escrow deed was ever recorded or offered in evidence in this case. However, a purported purchase money mortgage in the amount of $30,000, recited as executed and delivered by Forest Lawn to Jarett on August 8, 1946, and covering the 39.79 acres, was recorded on August 12, 1946. The mortgage recites:
"This is a purchase money mortgage given to secure the sum of $30,000.00 owed by the Mortgagor to the Mortgagee as the balance of the Purchase Price under a contract of sale entered into by Arthur W. Jarett and Arthur Weisler on the 21st day of June, 1946, and assigned by the said Arthur Weisler to the Grantee herein.
There has actually been conveyed at the time of the execution of this mortgage 4.003 acres of the tract herein described, and the balance of the tract herein described is to be conveyed to the said Mortgagor in accordance with the terms of the said contract. The balance due at any time under the said contract shall be considered a lien upon the entire tract herein described, until the full amount of this mortgage in the sum of $30,000. shall be paid in full."
The mortgage also provides for the release of any part of the premises upon the payment by the mortgagor of "$5.00 per grave" (3 1/2'x8'). The mortgage calls for a schedule of payments the last of which was to come due August 1, 1949.
*529 Jarett and his associates conveyed the 30.786 acres to Lillian B. Linker by deed of March 16, 1951, the description thereof being by metes and bounds for the 39.79 acres but made subject to a recital "exempt[ing] from this contract" 9.004 acres "previously conveyed" by the grantors to the "Forest Lawn Memorial Park" by deeds recorded in three specified books at specified pages. After mesne conveyances one Myron Fox and his wife conveyed the 30.786 acres to Garden of Memories by deed dated April 15, 1952 and recorded May 22, 1952. The deed first describes the property conveyed by metes and bounds for the 39.79 acres and then excepts and reserves out four tracts, each described by metes and bounds (for 4.003 acres, 1.500 acres, 1.5 acres and 2.00 acres, respectively) and identified therein as premises conveyed by Jarett to Forest Lawn by three deeds expressly identified as to grantor, grantee, date, and recorded book and page. These deeds are the same recorded deeds aforementioned from Jarett to Forest Lawn.
The records show that the mortgage taken back by Jarett from Forest Lawn, aforementioned, was assigned by Jarett to Linker February 3, 1949 (recorded January 22, 1952). The assignment recites that $11,500 is then due thereon. The mortgage was "released" by Jarett in favor of Linker on March 31, 1951. An action to foreclose the mortgage was instituted by Linker, Jarett and the latter's associates on February 23, 1952, and a lis pendens was filed March 1, 1952. This action was withdrawn or discontinued in 1959 in some manner completely unintelligible from the instant record. No order appears to have been entered. Upon objection by plaintiff at the trial herein to the materiality of correspondence between counsel in the foreclosure proceeding relating to a proposed termination of those proceedings without prejudice, sought to be offered in evidence by defendant, the trial court declared: "I will disregard any reference to the disposition of the foreclosure suit other than that it lasted from 1952 to 1959."
*530 At the trial plaintiff's material proofs were essentially as follows: A witness, Birnbaum, gave testimony tending to indicate Garden of Memories paid substantial consideration for the property. A title searcher (not a member of the bar) testified that Forest Lawn was not in the chain of title for the 30.786 acres and was not required to be searched in the mortgagor index as to that property. He also testified that proper searching practice (in relation to the 30.786 acres) did not call for examination of the three deeds mentioned in the reservations in the deed from Fox to Garden of Memories, except for the metes and bounds descriptions therein and except to look "for any encroachments and reservations that may affect the property."
This constituted plaintiff's case.
After a motion by defendant to dismiss on both jurisdictional and constructive notice grounds, decision on which was reserved by the court, defendant submitted the following. A lawyer-title searcher testified that proper searching practice is to read the entirety of any deed referred to in an exception contained in a deed in the chain of title; that in this case so doing brought his attention to the mortgage from Forest Lawn to Jarett. In the course of the testimony of this witness it was developed, incidentally, that Garden of Memories subsequently conveyed a small portion of the property in question to Garden of Memories Memorial Park Association, which plaintiff asserts is a completely independent organization. Another lawyer-title searcher supported the testimony of the first as to proper searching practice.
Defendant also adduced the testimony of William Osterweil, a lawyer, who said he organized Forest Lawn as a rural cemetery association. Osterweil also negotiated the transaction between Forest Lawn and Jarett, the latter being represented by the late Isidore M. Dubrow. The court excluded defendant's offer of a closing memorandum by Dubrow concerning the escrow deed.
Defendant closed its case without offering in evidence the original contract of sale for the property, the escrow deed, *531 any proofs concerning the amount of money paid on the contract, or any details concerning the extent of any physical possession by it of the property, actual dedication of the property at any time to cemetery purposes, sales of burial lots or the like. In its answer and counterclaim, and in the pretrial order, defendant had alleged that the original contract price for the 39.79 acres was $38,000, of which it had paid a total of $26,500, leaving $11,500 besides interest due on the mortgage. It sought in the counterclaim alternative relief of a conveyance of a total 13 1/4 acres (inclusive of the 9.003 acres) out of the entire 39.79 acres, purportedly pursuant to the release clause of the mortgage.
In deciding the case in favor of defendant on the merits the trial judge did not expressly deal with defendant's motion to dismiss on jurisdictional grounds, particularly plaintiff's alleged failure to show peaceable possession. Since defendant presses the point before us, we deal with it. The historical explanation for the requirement in predecessor statutes to N.J.S.A. 2A:62-1 et seq. going back for many years (e.g., Rev. 1877, p. 1189, § 1), that in order to vest jurisdiction in Chancery of a quiet-title suit plaintiff must be alleged to be in the peaceable possession of the lands, was that otherwise plaintiff would have an adequate remedy at law  e.g., ejectment (now an action for possession of lands) for possessory actions by others. Barry v. Tunick, 97 N.J. Eq. 281 (E. & A. 1925); Sheppard v. Nixon, 43 N.J. Eq. 627, (E. & A. 1887). There is no suggestion whatever that defendant here has interfered with plaintiff's possession, if any, by any such act as would give rise to an action at law for redress. However the only act of plaintiff in evidence possibly referable to exercise of possession is plaintiff's sale and conveyance of some two acres out of the 30.786 acres to a cemetery association. But we need not decide whether this is technically sufficient to support jurisdiction under N.J.S.A. 2A:62-1 et seq. In view of the abolition in this State of the distinction between law and equity jurisdiction (except for administrative allocation of litigation between the *532 Chancery and Law Divisions of the Superior Court) and the New Jersey philosophy of subordination of procedure to effectuation of substantive justice, we should not here strain toward abrogation of jurisdiction to settle the real controversy between these litigants. In any event, an alternative jurisdictional basis for consideration of the meritorious title question here presented resides in the equity jurisdiction to remove a cloud on the title (bill quia timet). Sheppard v. Nixon, supra; Estate of Gilbert Smith, Inc. v. Cohen, 123 N.J. Eq. 419, 425 (E. & A. 1938).
We thus proceed to the merits.
It is conceded by defendant that it did not show actual knowledge by plaintiff of its rights as a contract-vendee of the 30.786 acres when the latter purchased the property for value in 1952. It relies on the doctrines of constructive notice from the record and duty of inquiry from recitals of record to fasten notice of its rights upon plaintiff. We agree with the trial court that plaintiff was subject to such notice, but not for all of the reasons stated in its opinion.
The question of notice here is two-fold: (a) was Garden of Memories as purchaser on constructive notice of the information relative to defendant's interest contained in the three recorded deeds for 9.003 acres from Jarett to Forest Lawn, independent of the exception recitals in Jarett's later deed to Linker and in the deed from Rose to Garden of Memories?; (b) did the exception recitals in Jarett's later deed to Linker and in the deed from Rose to Garden of Memories, referring to the three deeds from Jarett to Forest Lawn, place plaintiff on constructive notice of both the entire contents of the said three deeds and of the existence and nature of defendant's interest to which it would have been led by investigation of the information in those deeds? We conclude that an affirmative answer to the first question is dubious in the light of Glorieux v. Lighthipe, 88 N.J.L. 199 (E. & A. 1915), but that the second question must be decided in the affirmative.
*533 In view of the conclusion last stated, we need not tarry long in indicating why the general duty of a purchaser to search the records probably does not impute notice of defendant's interest to plaintiff under these facts. While it is unquestionably the duty of the purchaser to search the grantor and other pertinent recording indexes for each holder of record title for the period during which he held such title, Bingham v. Kirkland, 34 N.J. Eq. 229, 234 (E. & A. 1881); Solomon v. Canter, 113 N.J. Eq. 43, 45 (E. & A. 1933); 4 American Law of Property, § 17.17, at 589-591 (1952), the apparent philosophy of Glorieux v. Lighthipe, supra, is that the effect of the recording acts is to relieve a purchaser of constructive notice of the contents of any recorded deed not in his strict chain of title except, seemingly, interests "lying in grant" (grants of title, easements, etc.) created by a recorded deed of a prior holder of the title during his tenure. See 88 N.J.L., at 203. The strict holding of Glorieux v. Lighthipe is that a purchaser is not on constructive notice of his grantor's covenant in a previous recorded conveyance of adjoining property to restrict the use of the property in question, the rationale being that the statute imputes notice of the record only to subsequent purchasers of the same property as that the subject of the record (88 N.J.L., at 201). See also Camp Clearwater, Inc. v. Plock, 59 N.J. Super. 1, 3 (App. Div. 1959), certif. den. 32 N.J. 348 (1960). It would seem to follow, a fortiori, that if a recorded deed of other property conveyed by the same grantor, itself purporting to create an interest affecting the subject property, is not constructive notice to a purchaser of the existence of such an interest, mere informational recitals in a deed from a prior grantor concerning interests in the property in question should not impart either constructive notice of or a duty of inquiry as to such interests. See Jones, "The New Jersey Recording Act, etc.," 12 Rutgers L. Rev. 328, 338 (1957).
*534 We have no present concern with the broad diversity of viewpoint concerning the merits of the rule of Glorieux v. Lighthipe nor as to its consistency with actual practices of title examiners in New Jersey. Compare Philbrick, "Limits of Record Search, etc.," 93 U. of Pa. L. Rev. 125, 171-175 (1944), approving Glorieux, with the contrary views taken in Finley v. Glenn, 303 Pa. 131, 154 A. 299 (Sup. Ct. 1931); McQuade v. Wilcox, 215 Mich. 302, 183 N.W. 771 (Sup. Ct. 1921), and Reed v. Elmore, 246 N.C. 221, 98 S.E.2d 360 (Sup. Ct. 1957).
However, as indicated, constructive notice of defendant's interest does devolve upon plaintiff because of the recitals in the exceptions and reservations as to the lands conveyed set forth in deeds in its own direct chain of title. The deeds from Jarett to Linker and from Rose to plaintiff (not to mention two mesne deeds) identify the deeds from Jarett to Forest Lawn as the basis for the reservations and exceptions from the areas conveyed in the deeds constituting plaintiff's chain of title. This was notice of such deeds and called for inspection thereof. Examination of these instruments would put the reader on notice of the existence of the escrow deed and the mortgage. Consequent examination of the mortgagor index for Forest Lawn would have led to disclosure of the text of the mortgage as recorded and thereby of the basic terms of the contract of sale taken over by Forest Lawn as assignee of the vendee of Jarett and associates.
* * * it is established that every purchaser takes title subject to any defects, reservations and exceptions that are referred to in his deed, or that may be ascertained by reference to his chain of title as spread forth upon the public records. [Mitchell v. D'Olier, 68 N.J.L. 375, 384 (E. & A. 1902)]
As more broadly stated in Roll v. Rea, 50 N.J.L. 264 (Sup. Ct. 1888):
"[The purchaser] is undoubtedly chargeable with notice of every matter affecting the estate which appears upon the face of any deed *535 forming an essential link in the chain of instruments through which he derived his title, and also with notice of whatever matters he would have learned by any inquiry which the recitals in these instruments made it his duty to pursue." [at 268; emphasis added]
See also, Camp Clearwater, Inc. v. Plock, 52 N.J. Super. 583, 598-599 (Ch. Div. 1958), aff'd 59 N.J. Super. 1, supra, certif. den. 32 N.J. 348 (1960).
It is well recognized that a record which affords record notice of the transfer therein made may contain a statement or recital which does not of itself give either record notice or actual notice but which does place on inquiry one who is affected by the record. 4 American Law of Property, § 17.28, at 608-609 (1952). A purchaser who is placed on inquiry is chargeable with notice of such facts as might be ascertained by a reasonable inquiry. McCrea v. Newman, 46 N.J. Eq. 473, 474 (Ch. 1890).
A soundly reasoned example of imputed constructive notice based upon the duty of inquiry from the record, though leading beyond the purchaser's chain of title, is Kennedy v. Island Development Co., 9 N.J. Misc. 921, 156 A. 233 (Cir. Ct. 1931). There defendant in ejectment (now an action for possession of lands) claimed under a deed which described the property by reference to a mortgage stated as recorded in a specified book and page. The mortgage had been previously released to plaintiff by release duly noted on the record of the mortgage. The release contained recitals of an unrecorded grant to plaintiff. The court held defendant bound by constructive notice, saying it had "clews" which were "so easily followed that to have failed to do so charges that company with its own neglect." (9 N.J. Misc., at 924).
We think the foregoing principles apply here to impute notice of defendant's rights in the 30.786 acres  such as they were  to plaintiff at the time it purchased the property, and that it therefore took subject thereto.
Plaintiff contended below and on the appeal that defendant's contract rights were defeated by virtue of N.J. *536 S.A. 46:21-3 which renders void as against subsequent purchasers recorded contracts of sale of realty not followed by legal action, and recorded lis pendens, for enforcement or for rescission, etc., of such agreement, within specified time periods of the stipulated date of consummation, etc. While conceding that this contract was not recorded, plaintiff argues defendant's rights can rise no higher against it than if the contract had been recorded. This is specious. The statute cannot be rewritten by the court. The statute does not here apply because the contract was not recorded. Koppel v. Olaf Realty Corp., 56 N.J. Super. 109, 118 (Ch. Div. 1959), aff'd 62 N.J. Super. 103 (App. Div. 1960); Reade v. Leslie, 137 N.J. Eq. 343, 350-351 (Ch. 1945); Storch v. Tepperman, 99 N.J. Eq. 48, 52 (Ch. 1926).
While, therefore, we agree with the statements in the opinion of the trial court that "The interest of Garden of Memories is held to be subordinate to that of Forest Lawn," it does not follow that a judgment of simple dismissal of the complaint was necessarily the appropriate course. The statute directs that the court "finally settle and adjudge whether a defendant to the suit has an estate, interest or right in or lien or encumbrance upon the affected lands, or any part thereof, and what the same is and in or upon what part of the affected lands it exists." N.J.S.A. 2A:62-6. This was obviously not done here. Neither the opinion nor the judgment purports to declare what title to the property vests in defendant, nor could the court properly do so in the existing state of the proofs, where defendant was in at least prima facie default of payment of the amount due on the contract of sale, if not subject to the defenses of laches, abandonment, waiver and estoppel asserted in the pretrial order by plaintiff.
The following added observations concerning the trial court's opinion are necessary against the event of retrial. None of the conclusions therein resting upon the assumption of dedication of the lands to cemetery purposes can stand without more proof than contained in the instant record *537 concerning actual dedication or use of the property for cemetery purposes. The court stated that the availability of the remedy of rescission in favor of a vendor of cemetery lands to a cemetery association in possession must be viewed as doubtful. We express no view on that proposition on the state of the present record. But in the absence of actual dedication and use of the property for cemetery purposes it is difficult, on principle, to see why a vendor should not have, even against a cemetery association, the ordinary right of rescission of an executory contract of sale on which the vendee is in material default (absent other legal or equitable considerations or otherwise controlling provisions of the contract). Cf. N.J.S.A. 8:2-42, permitting sale for general purposes of lands acquired for burial purposes by a cemetery association, before use or sale of portions thereof for burial purposes. However, this entire subject is left open for proper adjudication on the law and the facts, as may appear upon retrial, if any. As to qualification of vendor's lien where the vendee dedicates for cemetery purposes, see Attorney-General v. Linden Cemetery Ass'n, 90 N.J. Eq. 404 (Ch. 1919), aff'd sub nom. Bliss v. Linden Cemetery Ass'n, 91 N.J. Eq. 329 (E. & A. 1920).
The trial court stated that the foreclosure action was dismissed in 1959 "apparently" because of the statutory immunity of Title 8 cemetery associations from mortgage foreclosure sales. N.J.S.A. 8:2-27. We refer to the earlier part of this opinion indicating that the obscure record herein affords no basis for a conclusion as to the reason for the discontinuance of the action. In this connection, additionally, the trial court opinion rejected plaintiff's contention that defendant had abandoned or waived its claim by not exercising any rights of ownership or possession over the 30.786 acres since termination of the foreclosure action, on the ground that "the dismissal" of the foreclosure "affirmed" Forest Lawn's right of possession. But there was no "dismissal" so far as the record shows. *538 We do not believe the discontinuance of the foreclosure "affirms" any right of possession. Whether Forest Lawn had a right of possession depends upon what would be disclosed by the original contract of sale in the light of all the other instruments and, desirably, testimony concerning the circumstances attending the negotiations for the contract and its assignment to Forest Lawn. No safe conclusions as to the foregoing can be drawn from this sparse record, particularly if plaintiff can be regarded as having satisfied the jurisdictional requirement for a quiet-title action, since in such case it was defendant's burden to establish its right, plaintiff having shown record title in itself. Graves v. Fancher, 81 N.J. Eq. 517 (E. & A. 1913); Warner v. Smith, 115 N.J. Eq. 572 (E. & A. 1934).
It should be noted, finally, in this regard, that the trial court made clear on the hearing of the post-decision motion by plaintiff for new findings, etc., that it did not intend by the judgment entered that day to preclude or bar whatever lawful remedy might exist on behalf of the vendor or its assignees in relation to any default in payment under the contract by the defendant.
We are thus brought to the question of what appellate action is appropriate under all the circumstances. Plaintiff's rights in the land have been held subordinate to those of defendant, but it is not held that plaintiff has no right. Defendant was merely a contract vendee of the property at the time of the creation of plaintiff's interest. The exact nature of its rights is uncertain for lack of evidence of the material circumstances (particularly the contract itself), and defendant's interest is possibly defeasible because of default in payment of the contract price or for other reasons.
Ordinarily, in the light of the policy of the statute calling for a full and complete adjudication of the rights of the parties in the property, we would remand and direct a trial of the issues relative to defendant's status under its contract. However, the particular remedy elected by a *539 party to a dispute over an executory contract of sale of realty is generally determinative of the nature of the relief available to it, whether on the law or the equity side of the court. For example, it may be that pursuit of any particular remedy by defendant would appropriately call for tender of the unpaid purchase price plus interest. (We imply no view on the merits.) It does not seem to us that the court should in the present posture of this case direct either party to initiate any particular remedy unless it chooses voluntarily to do so. The court can, however, remain hospitable to the initiative of either or both toward that end, within the framework of this action.
The cause is remanded to the Chancery Division for: (1) modification of the judgment so as to declare plaintiff to have record title to the 30.786 acres, but subject and subordinate to the legal or equitable rights, if any, which defendant may have by virtue of its contract to purchase the property from Jarett and associates and by virtue of the several other instruments mentioned above, and (2) for an opportunity to be afforded either plaintiff or defendant within a fixed, reasonable time to file a supplemental pleading in this cause electing pursuit of such legal or equitable remedy as it may be advised is proper with respect to the contract aforesaid, or a supplemental pleading responsive to any such supplemental pleading filed by the other party. If any such pleading is filed the case should be pretried and tried. Failing the filing of any supplemental pleading by either party the judgment, modified as aforesaid, will constitute the final adjudication of the action.
So ordered; no costs.
NOTES
[1] All instruments mentioned were recorded except as otherwise stated.
[2] The parties agree this is a misstatement. Each conveyance is of land constituting a part of the 39.79 acres.