**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1529-23

MICHAEL MILLER and
JANICE MILLER,

      Plaintiffs-Respondents,

v.

ERNEST ZAGRANICHNY and
YELENA KONONCHUK,

      Defendants-Appellants.

_____

      Argued March 25, 2025 – Decided April 7, 2025

      Before Judges Sumners and Perez Friscia.

      On appeal from the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. C-000045-21.

      Richard M. King, Jr. argued the cause for appellants (KingBarnes, attorneys; Richard M. King, Jr., of counsel; Marisa J. Hermanovich, on the briefs).

      John F. Palladino argued the cause for respondents (Hankin Sandman Palladino Weintrob & Bell, PC, attorneys; John F. Palladino and Evan M. Labov, on the brief).

PER CURIAM

In this property dispute, defendants Ernest Zagranichny and Yelena Kononchuk appeal from the June 23, 2023 Chancery Division order, which granted summary judgment to plaintiffs Michael Miller and Janice Miller, awarding them: fee simple title to the property designated as Lot 2 in Block 1801 on the City of Brigantine's tax map after finding defendants were not bona fide purchasers; 120 feet of frontage along 21st Street South and the public alley while declaring defendants had 65 feet of frontage along 21st Street South and 70.69 feet of frontage along the public alley; and reformation of various recorded documents to reflect the frontage determinations. Defendants also appeal the motion judge's denial of their cross-motion for summary judgment. Having reviewed the record, parties' arguments, and applicable legal principles, we affirm.

I.

Plaintiffs and defendants are neighbors and own adjacent residential properties in Brigantine. Plaintiffs' property fronts on 21st Street South and abuts a public alley. The residential block consists of three lots. The parties

A-1529-23

separately purchased property from Brian Musto, and in the present matter dispute the specific obtained frontage of the respective purchased parcels.[1]

In September 2010, Musto had purchased Lot 3, Block 1801, with a street address on Ocean Avenue. In October 2010, Musto recorded his property deed, which provided a description of his frontage along 21st Street South as "the Easterly line of 21st Street South 105[] feet to a point in the Southerly line of Ocean Ave[nue]."

In September 2015, plaintiffs initially purchased a residential property located at 21st Street South, Lot 2, Block 1801, from a third party. On October 9, plaintiffs recorded their property deed, which described Lot 2 as having 80 feet of frontage along 21st Street South, with the Atlantic County Clerk's office. Later in 2015, Musto filed a Brigantine Planning Board (Board) application seeking to subdivide his property into two residential parcels, which would have added a fourth house on the block. Plaintiffs objected to Musto's proposed subdivision.

---

[1] The parties agree that frontage discrepancies exist between the parties' lots of 1.33 feet along 21st Street South and 1.37 feet along the public alley that are inextricable linked, but for efficiency and clarity, the parties mainly reference the 1.33 feet 21st Street South deficiency. Therefore, throughout the opinion, we focus on the 21st Street South discrepancy, recognizing our opinion bears on both.

A-1529-23

In 2015, Musto settled with plaintiffs, agreeing to sell them "a 40[ feet] [by] 90[ feet] portion of . . . Lot 3," which was "immediately adjacent to the 90[ feet] property line of [plaintiffs'] Lot 2." The agreement provided that "[t]he intention of the Parties [wa]s to convey exactly enough land to [plaintiffs] so that . . . [they] ha[d] a total of 10,800 sq[uare] f[eet] of land with frontage along 21st Street South and rear Public Alley of 120[ feet], no more, no less." It further stated, "In the event additional land [wa]s required as a result of minor surveying discrepancies," Musto "agree[d] to convey to [plaintiffs] . . . the exact amount of land that [wa]s needed to ensure . . . [plaintiffs'] purchase hereunder result[ed] in [their] having a total . . . land with frontage along 21st Street South and the rear Public Alley of 120[ feet]."

Musto filed a Board application to subdivide his property, which included selling a parcel of Lot 3 to plaintiffs. Musto's subdivision plan delineated that the total frontage for Lots 2 and 3 along 21st Street South was 186.33, with Lot 2 having 120 feet and Lot 3 having 66.33 feet. The subdivision plan did not account for his 2010 deed that indicated that Lot 3 had 105 feet of frontage along 21st Street South and plaintiffs' Lot 2 deed that provided for 80 feet of frontage along 21st Street South, which together consisted of only 185 feet of frontage as opposed to the 186.33 included in the plan. The subdivision plan also

illustrated the total frontage for Lots 2 and 3 along the public alley was 192.06 feet, with Lot 2 having 120 feet and Lot 3 having 72.06 feet. The subdivision plan also did not address the similar discrepancy created regarding the combined frontage along the public alley. Plaintiffs purchased the 40 feet by 90 feet parcel from Musto for $325,000 to specifically increase their frontage to the required 120 feet of frontage for a subdivision as of right without a variance. The subdivision plan referenced and included a reduced size Brigantine tax map,[2] which had frontage measurements that were difficult to discern.

The Board's December 9, 2015 resolution approving Musto's minor subdivision memorialized that after the subdivision, plaintiffs' Lot 2 "w[ould] have a lot area of 10,800[ square feet]" and "lot frontage of 120[ feet]." Further, the resolution noted that "the plan w[ould] be revised to correct a dimensional error (Lot 2's existing frontage [wa]s identified as 90[ feet] where it appear[ed] to be 80[ feet])."

On March 15, 2016, Musto recorded his January 22, 2016 subdivision deed, which evidenced the 40 feet by 90 feet parcel sale to plaintiffs and provided in the legal description a reference to the "METES AND BOUNDS

---

[2] Brigantine's tax map at the time of the subdivision provided that Lot 2's frontage along 21st Street South was 80 feet and Lot 3's frontage along 21st Street South was 105 feet.

DESCRIPTION for a portion of [L]ot 3 in Block 1801, as shown on [the] minor subdivision plan . . . dated 11/05/15, revised 12/14/15" under "project number 32794." The description also referenced the subdivision plan and provided for "66.33[ feet]" along 21st Street South. The deed specifically included plaintiffs' purchased parcel "known as the Southerly 40 f[ee]t by 90 f[ee]t portion of Lot 3."

On March 15, 2016, Musto also recorded his January 22, 2016 confirmatory deed, evidencing the conveyance of the remaining Lot 3 property to himself. The legal description of Lot 3's frontage along 21st Street South was "66.33[ feet]." The confirmatory deed also referenced the "minor subdivision plan." On April 15, 2016, plaintiffs recorded their consolidation deed to memorialize their newly-increased Lot 2 with the purchased parcel of Musto's Lot 3, and it referenced the minor subdivision plan as well. The legal property description included Lot 3's 21st Street South frontage of "66.33[ feet]," mentioned the "minor subdivision plan," and included the new Lot 2 frontage of 120 feet along 21st Street South. Plaintiffs' property, in accordance with the Board's limited conditions, was subdividable with 120 feet of frontage on 21st Street South.

In March 2017, after defendants agreed to purchase Lot 3 from Musto, their title search company provided its report. It attached a picture of a Brigantine tax map, which listed Lot 3's frontage on 21st Street South as 105 feet and Lot 2 as 80 feet. The tax map also listed Lot 3's frontage along the public alley as 110.69 feet and Lot 2's as 80 feet. A handwritten title search sheet noted Musto's conveyance of the "Lot 3 40 [feet by] 90 [feet]" subdivision.

On April 10, 2017, after defendants purchased Musto's remaining Lot 3 property, they recorded their March 28, 2017 deed. Defendants' deed provided a property description, including "BEING [L]ot 3 in Block 1801 as shown on [the] minor subdivision plan." The deed further notes that it is "UNDER AND SUBJECT to any and all covenants, conditions, rights, reservations, restrictions[,] and easements of record, if any."

In July 2018, defendants counsel wrote to plaintiffs stating, "[T]here . . . [exists] a 1.33[ feet] discrepancy in terms of the distance running along 21st [S]treet [S]outh. The back deeds list the total distance as 185[ feet] (65[ feet] for [defendants'] lot, 120[ feet] for [plaintiffs'] lot)." Counsel explained that defendants had an engineering company "stake out the house" and because it discovered a "1.33[ feet] deficiency exist[ed]," they were "in need of refiling the subdivision plan, which would show [defendants'] lot having a distance of 65[

7

feet] and [plaintiffs'] lot having 120[ feet]." On August 4, 2021, defense counsel advised plaintiffs and Brigantine's zoning and construction officials that defendants were asserting that their property deed for Lot 3 evidenced 66.33 feet of frontage along 21st Street South. Defendants argue that Musto had built a fence approximately 66.3 feet from Ocean Avenue.

The parties recognized that a discrepancy existed in the subdivision plan, subdivision deed, confirmatory deed, and consolidation deed because plaintiffs purchased the 40 feet by 90 feet Lot 3 parcel from Musto to increase their frontage along 21st Street South to 120 feet, and the documents indicated that plaintiffs had 120 feet and defendants had 66.33 feet of frontage on 21st Street South. Historically, recorded documents indicated only 185 feet of combined frontage. The recent property documents also referenced the subdivision plan, which provided a 1.37 feet discrepancy along the public alley because the combined public alley frontage of Lots 2 and 3 was shown as 192.06 feet rather than 190.69 feet.

On August 6, 2021, plaintiffs filed a complaint alleging: quiet title, N.J.S.A. 2A:62-1 to -10; ejectment and determination of title, N.J.S.A. 2A:35-1 to -3; quia timet; reformation of deeds and instruments for mistake; declaratory judgment; trespass to real property; and private nuisance. On August 4, 2023,

defendants filed an amended answer and counterclaims alleging: declaratory judgment; quiet title; unjust enrichment (improvements to property); and trespass. On February 27, 2023, plaintiffs moved for partial summary judgment seeking a determination that they had sole legal and equitable fee simple ownership of the disputed area, had frontage of 120 feet along 21st Street South, and defendants had frontage of 65 feet along 21st Street South. Defendants filed opposition and cross-moved for summary judgment arguing they were bona fide purchasers.

Defendants' expert authored a three-page report. The expert opined that based on the record, defendants did "not have constructive or inquiry notice." The expert further opined that "the search of documents of record[] [wa]s not intended to resolve or call into question small deviations in lot size." He provided a legal conclusion, stating that "[t]he purpose of the Recording Act . . . is to focus on matters of [title], and not dimensions of property."

On June 23, 2023, after argument, Assignment Judge M. Susan Sheppard[3] issued an order accompanied by a cogent and comprehensive written statement of reasons granting plaintiffs' summary judgment motion on all counts except

---

[3] We note Assignment Judge Sheppard was serving as the Presiding Judge of the Chancery Division, General Equity Part at the time of the decision.

A-1529-23

trespass to real property and private nuisance, which were transferred to the Law Division. She also denied defendants' cross-motion for summary judgment. In her opinion, the judge noted that although plaintiffs were "entitled to reformation" for both "intertwined" frontage discrepancies, her analysis would focus on the 1.33 frontage discrepancy along 21st Street South for the ease of the reader, as "they [we]re the same error." She also found plaintiffs were "the sole legal and equitable owners of the 1.33 feet in dispute," as defendants were "not bona fide purchasers for value because they had constructive notice of the error in footage."

After considering the frontage discrepancies, Judge Sheppard specifically found: defendants were not bona fide purchasers because they had constructive notice of plaintiffs purchase of the disputed area; plaintiffs were owners in fee simple of the disputed 1.33 feet along 21st Street South and 1.37 feet along the public alley, which resulted in plaintiffs retaining 120 feet of frontage along 21st Street South and the public alley; and defendants retained 65 feet of frontage along 21st Street South and 70.69 feet of frontage along the public alley. She further found that reformation of the five recorded instruments (subdivision plan, subdivision deed, confirmatory deed, consolidation deed, and defendants' deed) was appropriate to cure the initially unidentified measurement

discrepancies.  Finally, Judge Sheppard found that equitable estoppel applied to prevent defendants from disavowing their prior assertion, which defendants relied on, that they would file for an amended subdivision plan preserving plaintiffs' 120 feet of frontage obtained from purchasing 40 feet of frontage from Musto.

On appeal, defendants contend reversal is warranted because:  disputed issues of material fact exist, including those their expert established; the judge erred in denying defendants' cross-motion; and the equities do not favor plaintiffs over defendants or compel reformation.

II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); see also R. 4:46-2(c).  "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).  "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'"  Ibid. (alteration in original) (quoting Friedman v. Martinez, 242 N.J. 449, 472 (2020)); see also R.

4:46-1 to -6. "Summary judgment should be granted 'if the discovery and any affidavits show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" DeSimone, 256 N.J. at 180-81 (quoting Perez v. Professionally Green, LLC, 215 N.J. 388, 405 (2013)) (internal quotation marks omitted).

N.J.S.A. 2A:62-1 to -10 governs quiet title actions. N.J.S.A. 2A:62-1 provides:

> Any person in the peaceable possession of lands in this state and claiming ownership thereof, may, when [their] title thereto, or any part thereof, is denied or disputed, or any other person claims or is claimed to own the same, or any part thereof or interest therein, . . . maintain an action in the superior court to settle the title to such lands and to clear up all doubts and disputes concerning the same.

"One of the purposes of N.J.S.A. 2A:62-1 is to permit a landowner to sue for clarification of the validity or reach of [their] title in circumstances that otherwise preclude a forum for the resolution of such a dispute." Suser v. Wachovia Mortg., FSB, 433 N.J. Super. 317, 325 (App. Div. 2013).

A bona fide purchaser for value is one who takes title to property without notice of a prior interest "and has paid a valuable consideration therefor[e]." Venetsky v. W. Essex Bldg. Supply Co., 28 N.J. Super. 178, 187 (App. Div. 1953); see also Monsanto Emps. Fed. Credit Union v. Harbison, 209 N.J. Super.

A-1529-23

539, 542 (App. Div. 1986). "The statutes have been consistently interpreted to mean that the subsequent purchaser will be bound only by those instruments which can be discovered by a 'reasonable' search of the particular chain of title." Palamarg Realty Co. v. Rehac, 80 N.J. 446, 456 (1979). "That is, a prospective purchaser need only search the records to discover conveyances or other significant acts of an owner from the date the deed into that person was recorded until the date he relinquishes record title." Ibid. "A purchaser may well be held bound to examine or neglect at his peril, the record of the conveyances under which he claims. . . ." Phx. Pinelands Corp. v. Davidoff, 467 N.J. Super. 532, 587 (App. Div. 2021) (quoting Glorieux v. Lighthipe, 88 N.J.L. 199, 203 (E. & A. 1915)).

"New Jersey's recording statutes address important public policy concerns." Island Ventures Assocs. v. N.J. Dep't of Env't Prot., 179 N.J. 485, 492 (2004). A principal purpose of the recording statutes is to protect bona fide purchasers "against the assertion of prior claims to the land based upon any recordable, but unrecorded instrument." Cox v. RKA Corp., 164 N.J. 487, 507 (2000) (quoting 29 N.J. Practice, Law of Mortgages, § 102, at 336 (Roger A. Cunningham & Saul Tischler) (1975)). The Supreme Court has elucidated:

> An historical study of the [Recording] Act, as well as
> an analysis of the cases interpreting it, leads to the

conclusion that it was designed to compel the recording of instruments affecting title, for the ultimate purpose of permitting purchasers to rely upon the record title and to purchase and hold title to lands within this state with confidence. The means by which the compulsion to record is accomplished is by favoring a recording purchaser, both by empowering him to divest a former non-recording title owner and by preventing a subsequent purchaser from divesting him of title. This ability to deprive a prior and bona fide purchaser for value of his property shows a genuine favoritism toward a recording purchaser. It is a clear mandate that the recording purchaser be given every consideration permitted by the law, including all favorable presumptions of law and fact. It is likewise a clear expression that a purchaser be able to rely upon the record title.

[Island Venture Assocs., 179 N.J. at 492 (alteration in original) (emphasis omitted) (quoting Palamarg Realty Co., 80 N.J. at 453).]

"A deed or other conveyance of . . . real property shall be of no effect . . . against subsequent bona fide purchasers . . . for valuable consideration without notice and whose conveyance . . . is recorded, unless that conveyance is evidenced by a document that is first recorded." N.J.S.A. 46:26A-12(c).[4] "A recorded deed serves as constructive 'notice to all subsequent purchasers.'" Branco v. Rodrigues, 476 N.J. Super. 110, 119 (App. Div. 2023) (quoting

---

[4] We note that in 2021, the Legislature adopted an amendment to N.J.S.A. 46:26A-12, which is not relevant for our consideration.

N.J.S.A. 46:26A-12(a)); see also N.J.S.A. 46:26A-12(a) ("[A]ny recorded document affecting the title to real property is, from the time of recording, notice to all subsequent purchasers . . . of the execution of the document recorded and its contents."). "In the context of the race notice statute, constructive notice arises from the obligation of a claimant of a property interest to make reasonable and diligent inquiry as to existing claims or rights in and to real estate." Cox, 164 N.J. at 496 (quoting Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 108 (App. Div. 1990)).

"[Q]uia timet is an equitable proceeding of ancient origin which permits the plaintiff to take affirmative action to protect or perfect his title because he fears . . . the claim of the defendant may be injurious to him." Phx. Pinelands Corp., 467 N.J. Super. at 614 (alteration in original) (italicization omitted) (quoting 2 Lawrence J. Fineberg, Handbook of New Jersey Title Practice § 9705 at 97-3 (3d ed. 2003, rev. 2012)). "A quia timet proceeding is broader in scope than a statutory quiet title action because possession . . . 'is not an essential.'" Ibid. (italicization omitted) (quoting Est. of Gilbert Smith v. Cohen, 123 N.J. Eq. 419, 424 (E. & A. 1938)).

"This jurisdiction 'to relieve the holders of real property from vexatious claims to it, casting a cloud upon their title, and thus disturbing them in its

15

peaceable use and enjoyment, is inherent in a court of equity.'" Cohen, 123 N.J. Eq. at 425 (quoting Holland v. Challen, 110 U.S. 15, 24 (1884)); see also Suser, 433 N.J. Super. at 325 n.2 ("The quiet-title action, which, even though codified by statute retains its equitable underpinnings, . . . is generally appropriate only in the absence of an adequate remedy at law."). "In fashioning relief, the Chancery judge has broad discretionary power to adapt equitable remedies to the particular circumstances of a given case." Kaye v. Rosefielde, 223 N.J. 218, 231 (2015) (quoting US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 476 (2012)). "[E]quitable remedies 'are distinguished by their flexibility, their unlimited variety,' and 'their adaptability to circumstances.'" Tarta Luna Props., LLC v. Harvest Rests. Grp. LLC, 466 N.J. Super. 137, 153 (App. Div. 2021) (quoting Salorio v. Glaser, 93 N.J. 447, 469 (1983)).

Reformation of a contract is an equitable remedy, traditionally available when there exists "either mutual mistake or unilateral mistake by one party and fraud or unconscionable conduct by the other." Dugan Constr. Co. v. N.J. Tpk. Auth., 398 N.J. Super. 229, 243 (App. Div. 2008) (quoting St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden, 88 N.J. 571, 577 (1982)). Our Supreme Court has stated that mutual mistake exists when "both parties were laboring under the same misapprehension as to [a] particular, essential

fact."  Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 608 (1989) (alteration in original) (emphasis omitted) (quoting Beachcomber Coins, Inc. v. Boskett, 166 N.J. Super. 442, 446 (App. Div. 1979)).  Additionally, "New Jersey law also requires for reformation for mutual mistake that the minds of the parties have met and reached a prior existing agreement, which the written document fails to express."  Ibid.

## III.

In view of these governing legal principles, we conclude Judge Sheppard's order, which granted plaintiffs summary judgment as defendants were not bona fide purchasers given their constructive notice of the frontage discrepancies, is amply supported by the record.  Her finding that defendants had constructive notice that plaintiffs purchased a 40 feet by 90 feet parcel from Musto's Lot 3 to obtain 120 feet of frontage on their Lot 2 and that the frontage discrepancies were apparent from their recorded chain of title deeds, is unassailable.  We also concur with her finding that the equities weigh in favor of plaintiffs.  Therefore, we affirm substantially for the reasons expressed in her cogent and thoughtful written decision, adding only the following comments.

We reject defendants' argument that they are bona fide purchasers because when they purchased "Lot 3 from Musto, all recorded documents made clear Lot

3 was 66.3[ feet] wide." While defendants are correct that the 2015 subdivision plan and subsequent recorded deeds incorrectly described their frontage along 21st Street South as 66.3 feet, that error is not dispositive and does not negate their constructive notice from multiple recorded documents. Defendants were provided notice in their chain of title that Musto sold plaintiffs' 40 feet of frontage along 21st Street South, which increased plaintiffs documented 80 feet of frontage to 120 feet. Notably, defendants' expert conceded in his opinion that "if one were to review . . . certain metes and bounds descriptions in older deeds in . . . [defendants'] chain of title, . . . one could determine that . . . the combined size of the parcels was 185 feet." Specifically, at least five recorded prior Lot 3 deeds, spanning over thirty years, memorialized Lot 3's 105 feet of frontage along 21st Street South. Ergo, once Musto conveyed to plaintiffs the 40 feet by 90 feet parcel, with 40 feet of frontage along 21st Street South, only 65 feet of frontage along 21st Street South remained on Lot 3. Moreover, Musto's most recently recorded 2010 acquisition deed irrefutably delineated Lot 3 had, along "the Easterly line of 21st Street South[,] 105[] feet" of frontage. Thus, defendants certainly had notice of the frontage discrepancy from the prior recorded Musto acquisition deed, as the recorded dimension did not align.

18

We also note that in addition to the deeds in defendants' chain of title alerting them of the discrepancy, the more recently recorded deeds (subdivision deed, confirmatory deed, and consolidation deed) each referenced the 2015 subdivision plan. For example, Musto's confirmatory deed reflected he was only transferring ownership to himself of "a part/portion of" Lot 3 and referenced the minor subdivision plan.[5] Thus, defendants had notice of plaintiffs' purchase of Musto's parcel with forty feet of frontage along 21st Street South and the discrepancies, which a review of the subdivision plan would have further illustrated. We note defendants' deed provides they are "[subject] to any and all covenants . . . of record."

---

[5] We note while the Board's resolution was not recorded, defendants' chain of title contained multiple recorded deeds after 2015 that referenced Musto's subdivision plan, which, if investigated, would have alerted defendants that Musto had obtained Board approval. The Board's resolution granting Musto's 2015 subdivision application "expressly conditioned" that the approval was "expressly limited to the information provided in the application and the evidence submitted to the [B]oard. Any change in the proposed design . . . beyond that shown in the application and plans [wa]s prohibited." The resolution memorialized that: Musto was "subdivid[ing] off a 40[ feet] [by] 90[ feet] portion of his property . . . to [plaintiffs]"; plaintiffs' new Lot 2 would have "lot frontage of 120[ feet]"; and Lot 2 had an "existing frontage appear[ing] to be 80[ feet]." We derive that the Board's resolution is compulsory on the parties. Cf. Aldrich v. Schwartz, 258 N.J. Super. 300, 310 (App. Div. 1992) ("[H]olding that [a subsequent landowner] is bound by the . . . [Board's prior] restriction" because of "land planning considerations, and . . . the danger that a decision devitalizing long-standing variance conditions may prejudice existing development and the zoning plan of some towns and neighborhoods.").

A-1529-23

We are unpersuaded by defendants' arguments that: the frontage errors were "buried in the municipal files"; "no deed of record . . . [delineated] Lot 3 was 65[ feet] wide"; and no deed "list[ed] anything other than 66.3[ feet] wide" because these contentions ignore their constructive notice from recorded documents in their chain of title. Defendants could have discovered the information with reasonable diligence because recorded documents evincing the discrepancy were well within the more recent chain of title history. Therefore, defendants' arguments that they were without notice are unavailing. In sum, we discern no error in the judge's order granting plaintiffs' summary judgment and denying defendants' cross-motion for summary judgment, as defendants were not bona fide purchasers.

Defendants' appellate arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

20                                                                              A-1529-23