193 N.J. Super. 434 (1984)
474 A.2d 1096
SECURITY PACIFIC FINANCE CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
ROBERT TAYLOR AND MARIE TAYLOR, HIS WIFE, ET ALS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Atlantic County.
Decided January 20, 1984.
*436 Michael Sodowick for plaintiff (Sodowick, Richmond & Crecca, attorneys).
Robert M. Pickus, for defendant Insilco Corp. (Ribis, McCluskey, Ruane, & Graham, attorneys).
PERSKIE, J.S.C.
This matter presents for determination the question of the extent to which a mortgagee must search the record to avail itself of the protection afforded by the recording statute.
Plaintiff Security Pacific Finance Corporation (Security) brought suit to foreclose a mortgage it holds on residential property located in Hamilton Township, Atlantic County. Defendant *437 Insilco is the assignee of an interest in the form of a mortgage which it claims as a priority over the mortgage held by Security. The parties have entered into and filed a stipulation of facts and have brought crossmotions for summary judgment. There being no disputed issue of material fact, the matter is ripe for resolution on the crossmotions. R. 4:46-2.
The stipulation of facts establishes that Robert and Marie Taylor, husband and wife, (Taylor) entered into an agreement on February 14, 1976 to purchase the subject property from Lee A. Garell. The agreement was recorded July 27, 1976 in the office of the Atlantic County Clerk and called for a consideration of $5,000 for the purchase of the property, a vacant lot.
In December 1976 Taylor obtained a building permit from the municipality for the construction of a single family home on the subject premises. On June 8, 1978 they borrowed $22,400.50 from Insilco to finance the construction of the house. Taylor gave Insilco a note and mortgage, and the mortgage was recorded on July 27, 1978 in the office of the Atlantic County Clerk. As of the recordation of this "mortgage," Taylor had no record interest in the subject property other than as buyer under the February 14, 1976 agreement.
On October 15, 1979 Garell transferred title to the property to Berlee, Inc., a New Jersey corporation, with the deed being recorded November 27, 1979.
Taylor completed the construction of the home and received a temporary certificate of occupancy from the municipality in January 1980. Later that year Berlee, Inc. transferred the property to Taylor for $5,500, by deed dated September 2, 1980 and recorded October 7, 1980 with the Atlantic County Clerk.
In November 1980, Taylor borrowed $11,432.68 from plaintiff's assignor, and executed a note and mortgage in favor of plaintiff's assignor in that amount. In loaning the money to Taylor, plaintiff's assignor relied upon Taylor's representations that there were no mortgages, liens or encumbrances on the subject property, which representation was, of course, false. *438 The mortgage to plaintiff's assignor was dated November 4, 1980, and was recorded in the Atlantic County Clerk's office on November 6, 1980. Several months later, on March 27, 1981, Taylor applied to plaintiff's assignor for an additional loan, and again falsely represented in the loan application and affidavit that there were no other interests outstanding against the property. On March 27, 1981, Taylor executed a second mortgage in the sum of $19,500 in favor of plaintiff's assignor, which second mortgage was recorded on March 31, 1981.[1]
Taylor defaulted on the payments due under each of plaintiff's mortgages. Plaintiff's foreclosure action, initially brought without impleading Insilco as a party defendant, resulted in a final judgment in favor of plaintiff in the sum of $25,299.19, together with interest at the contract rate of 18% from December 11, 1982 to May 6, 1983, costs of $675.91, and interest on the judgment from May 6, 1983. A sheriff's sale was scheduled but, prior thereto, Insilco obtained an order reopening the judgment and permitting Insilco to file an answer, counterclaim, and crossclaim.[2] By consent the sheriff's sale was held on June 3, 1983, at which time Insilco purchased the land for $29,500. The net proceeds of the sale, $28,424.50, were deposited with the clerk of the court to abide the determination of the respective priorities of the claims of plaintiff and Insilco.
Plaintiff argues that Insilco's mortgage, while arguably valid against Taylor as of when Taylor acquired title on September 2, 1980, Decker v. Casky, 3 N.J. Eq. 446 (Ch. 1936); Tully v. Taylor, 84 N.J. Eq. 459, (E. & A. 1915), is subordinate to plaintiff's interest as a "subsequent ... mortgagee for valuable consideration, not having notice thereof." N.J.S.A. 46:22-1. *439 Plaintiff asserts that it is entitled to the protection of the statute, and that, in granting its mortgages to Taylor, its assignor was not obligated to search the record title of the subject property prior to September 1980, when Taylor acquired title. Palamarg Realty Company v. Rehac, 80 N.J. 446 (1979); Glorieux v. Lighthipe, 88 N.J.L. 199 (E. & A. 1915).
Insilco argues that the recordation of its mortgage on July 27, 1978, together with the alphabetical index of all mortgagors maintained by the Atlantic County Clerk, "provided Security with actual notice of the mortgage." Insilco also asserts that the alphabetical index required by N.J.S.A. 46:20-4 is a part of the record required to be maintained, and therefore the failure of plaintiff's assignor to check the alphabetical index as well as the grantor-grantee index before giving its mortgages was "unreasonable," and thereby prevents plaintiff from asserting the benefit of the statutory protection.
Insilco further asserts that plaintiff's assignor had constructive and inquiry notice of Taylor's interest in and claim to the property prior to the deed of September 1980, from the issuance of the building permit in 1976, the open possession of the property prior to the deed, and the consideration of $5,500 for a five acre tract containing a single family home. Insilco asserts that "when the reasonable investigation that should have been performed by plaintiff was undertaken, this possession by the Taylors and the reasons therefor would have been ascertained by Security."
For the reasons hereinafter stated, I am satisfied that the search of the records at the time plaintiff's assignor granted the mortgages was reasonable and appropriate, and therefore that plaintiff is entitled to assert its claim prior to the satisfaction of Insilco's mortgage.
The relevant provisions of the Recording Act are:
Except as otherwise provided herein, whenever any deed or instrument of the nature or description set forth in § 46:16-1 of this title, which shall have been *440 or shall be duly acknowledged or proved and certified, shall have been or shall be duly recorded or lodged for record with the County recording officer of the county in which the real estate or other property affected thereby is situate or located such record shall, from that time, be notice to all subsequent judgment creditors, purchasers and mortgagees of the execution of the deed or instrument so recorded and of the contents thereof. [N.J.S.A. 46:21-1]
Every deed or instrument of the nature or description set forth in § 46:16-1 of this title shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be void and of no effect against subsequent subject creditors without notice, and against all subsequent bona fide purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or whose mortgage shall have been first duly recorded or registered; but any such deed or instrument shall be valid and operative, although not recorded, except as against such subsequent judgment creditors, purchasers and mortgagees. [N.J.S.A. 46:22-1]
These provisions of the statute "have spelled out a broad policy and have left it to the searchers, conveyancers, and courts to construct a system of title searching within the bounds delineated by that policy, and to maintain that system in a good and workable order." Jones, "The New Jersey Recording Act  A Study of Its Policy," 12 Rutgers L.Rev. 328, 329 (1957). The statute "was designed to compel the recording of instruments affecting title, for the ultimate purpose of permitting purchasers to rely upon the record title and to purchase and hold title to lands within this state with confidence." Ibid.
It is likewise a clear expression that a purchaser be able to rely upon the record title. Inasmuch as such a title can only be established by a search of the records, it follows that the stated policy requires that this search be one which can be made within the bounds of reason, both as to time and expense, bearing in mind that what is reasonable under the circumstances existing in one generation may be unreasonable under those existing in a subsequent generation. [Id. at 330]
The determinative issues here presented are whether plaintiff's assignor was obliged to search the record prior to September 1980, when Taylor acquired title, and whether constructive or inquiry notice of Taylor's interests in the property is chargeable to plaintiff's assignor.
The statutes have been consistently interpreted to mean that the subsequent purchaser will be bound only by those *441 instruments which can be discovered by a "reasonable" search of the particular chain of title. That is, a prospective purchaser need only search the records to discover conveyances or other significant acts of an owner from the date the deed into that person was recorded until the date he relinquishes record title. Palamarg Realty Company v. Rehac, 80 N.J. 446, 456 (1979).
In the case of Wack v. Collingswood Extension Realty Co., 114 N.J. Eq. 253 (E. & A. 1933), a mortgagee sought to foreclose a mortgage granted on a certain lot which was not owned by the mortgagor at the time of the execution of the mortgage. The mortgagor acquired title to the property and recorded the deed some three and one half months after the issuance and recordation of the mortgage. On the same day it acquired title the mortgagor immediately conveyed the property to a third party who created a mortgage thereon. The trial court, in an opinion unanimously affirmed by the Court of Errors and Appeals, observed:
I think it would be entirely clear if the Collingswood Extension Realty Company had reacquired the title of this property and if the foreclosure were against that company without any intervening parties; then that mortgage covering the lot which was acquired afterward would be held to be a good mortgage against it. However, that situation does not exist here; the Collingswood Extension Realty Company had no title to the lot at the time the mortgage was given and there was nothing which would give the present holder of the title notice that this mortgage did cover it.
I think the case of Bingham v. Kirkland, reported in 34 N.J. Eq. 229, is a fair statement of the law and the rights of the parties and has application to this case. The usual method of examining a title is to search against the party who holds the record title up until the time he parts with the title and then search against the person who holds the title so long as he has the title. [at 255; emphasis supplied]
The significance of the determination by the Wack court of the "usual method of examining a title" is that such a methodology has established the standard of "reasonableness" for purposes of construction of the Recording Act.
As to the ... conclusion ... that a purchaser be charged only with such notice from the records as can be assertained by a reasonable search of those records, our courts have taken a very practical approach which has produced favorable *442 results. They have limited the record notice to conform with the existing mechanics and methods of search. When a question has arisen as to what constitutes record notice, they have first looked to the practice of the searchers and conveyancers to draw their conclusions, in much the same manner as the earlier courts of England had looked to the custom of merchants to establish the commercial law, and had looked to the practices and opinions of the conveyancers as the best evidence of the existing state of the land law. [Jones, supra at 335]
Applied to the facts in this matter, the decision in Wack establishes that plaintiff's mortgage is entitled to priority. The policy of the Recording Act is to provide a reasonable limit on the obligation of a purchaser or subsequent mortgagee to search the record. If a mortgagee were required to search beyond the acquisition of title by his mortgagor, "his task of making a search would be so onerous as not to be worth undertaking. Where would he begin and where would he end? The whole record hall awaits his scrutiny." Jones, supra at 329.
This conclusion likewise compels the rejection of Insilco's claim that plaintiff's assignor had constructive or inquiry notice of Taylor's interest in the property prior to September 1980. The purpose of the Recording Act is to protect those subsequent purchasers or mortgagees who have made a reasonable search of the record title. If such purchasers or mortgagees were required to search municipal records, or examine for any evidence of open possession of property, there would be no efficacy to the protection expressly provided by the statute.
Insilco argues that the alphabetical index of mortgagors required to be maintained by N.J.S.A. 46:20-4 is a part of the record that should be examined in any "reasonable" search of the record title. It cannot seriously be disputed that the index is a part of the record and that a purchaser or mortgagee has a duty to see to it that his instrument is properly recorded and indexed. See Jones, supra at 340-346. No New Jersey court has held, however, that the normal practice of title searchers and conveyancers includes a search of the index or that such a search is required to avail oneself of the protection of the *443 Recording Act. In addition, such a requirement in this case would be unreasonable, as the alphabetical index is maintained by year, and thus, in the normal course, would have been checked by plaintiff's assignor only as to the period after September 1980. There is nothing in the record title which could have alerted plaintiff's assignor to check the alphabetical index for the year 1978, two years before Taylor acquired title.
For all of the foregoing reasons judgment will enter granting plaintiff's motion for summary judgment, and denying Insilco's motion on its counterclaim. In view of the entry of the default of defendants Robert and Marie Taylor on Insilco's crossclaim, Insilco's application for summary judgment against Taylor is granted. Counsel for Insilco shall submit an updated certification as to the amount due on the mortgage, together with such other costs as may properly be entered against Taylor. Counsel for plaintiff shall submit an appropriate form of judgment as to all elements of the relief granted, on notice to counsel for Insilco.
NOTES
[1] Each of the mortgages to plaintiff's assignor was assigned to plaintiff for value, with the assignments being recorded on December 17, 1980 and May 6, 1981.
[2] Taylor defaulted both as to plaintiff's complaint and Insilco's crossclaim.