ASSISTED LIVING ASSOCIATES OF MOORESTOWN, L.L.C., Laurel Construction Management, Inc., and John and Jane Doe, Plaintiffs,

v.

MOORESTOWN TOWNSHIP, Moorestown Township Zoning Board Of Adjustment, Moorestown Township Planning Board, and Joshire Homeowners Association, Defendants.

Joshire Homeowners Association, Plaintiff,

v.

Calvin STOW, Scott J. Stow, Doris V. Schwering, Assisted Living Associates Of Moorestown, L.L.C., and Laurel Construction Management, Inc., Defendants.

Civil Action Nos. 97–4572, 98–5301.

United States District Court, D. New Jersey.

Dec. 29, 1998.

See also, 996 F.Supp. 409.

Steven C. Rother, A. Alberto Lugo, South Orange, NJ, for Plaintiffs, Assisted Living Associates of Moorestown, L.L.C., Laurel Construction Management, Inc., and John and Jane Doe.

George J. Botcheos, Cherry Hill, NJ, for Defendants, Moorestown Township, Moorestown Township Zoning Board of Adjustment.

Jeremy D. Countess, Moorestown, NJ, for Defendant, Moorestown Township.

Peter R. Thorndike, Ryan and Thorndike Cherry Hill, NJ, for Defendant, Moorestown Township Zoning Board of Adjustment.

Dennis P. Talty, Dennis P. Talty, P.C., Moorestown, NJ, for Defendant, Moorestown Township Planning Board.

Henry J. Tyler, Brandt, Haughey, Penberthy, Lewis & Hyland, Moorestown, NJ, for Defendant, Joshire Homeowners Association.

## OPINION

ORLOFSKY, District Judge.

Once again, this Court has been called upon to resolve a conflict between local autonomy and federal power, specifically, the clash between state common law which permits landowners to control the use of land by incorporating a restrictive covenant into a deed conveying the property to a purchaser which binds the purchaser, as well as all subsequent owners of the land, and the federal power to eradicate discrimination against the handicapped as reflected in the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* *See Assisted Living Assocs. of Moorestown, L.L.C., et al. v. Moorestown Township, et al.,* 996 F.Supp. 409 (D.N.J.1998) (*"Assisted Liv-*

*ing I* "). First, this Court must decide whether the restrictive covenant at issue bars the construction of an "assisted living" facility designed to care for the elderly and disabled. Second, assuming the restrictive covenant precludes the construction of the facility at the proposed site, I must next decide whether enforcement of the deed restriction would violate the Fair Housing Act. For the reasons set forth below, I hold that the clear and unambiguous terms of the restrictive covenant do not prohibit the construction of the "assisted living" facility at the proposed site. Accordingly, I need not decide whether the enforcement of the restrictive covenant would violate the Fair Housing Act.

On March 19, 1998, this Court granted the motion of the Plaintiffs, Assisted Living Associates of Moorestown, L.L.C. ("ALA"), and Laurel Construction Management, Inc. ("LCM," collectively, "Assisted Living"), for a preliminary injunction pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*,[1] enjoining the Defendants, Moorestown Township ("Township"), Moorestown Township Zoning Board of Adjustment ("Zoning Board"), and Moorestown Township Planning Board ("Planning Board," collectively, "Moorestown"), from enforcing two zoning ordinances which prohibited the construction of an assisted living facility. *See Assisted Living I*, 996 F.Supp. 409. Following the entry of the preliminary injunction, the parties resolved the case and entered into a written settlement agreement, dated July 27, 1998. In attempting to implement the settlement agreement, however, the parties reached an impasse over the meaning and scope of a restrictive covenant burdening the site of the construction of the proposed assisted living facility. The parties sought the assistance of the Court to bridge the impasse. On October 9, 1998, during a telephone conference call on the record with the Court and all counsel, counsel for Assisted Living made an oral application for leave to file an amended complaint. The Court granted the application and restored the case to the active docket. *See* Order of the Court (filed Oct. 13, 1998).

On October 19, 1998, Assisted Living amended its complaint to join as a party defendant, the Joshire Homeowners Association ("Joshire"), which represents the residents of a subdivision immediately adjacent to the site of the proposed assisted living facility. Assisted Living has now moved to modify the preliminary injunction to prevent Moorestown and Joshire from enforcing the restrictive covenant. In opposition to the motion to modify the preliminary injunction, Moorestown has filed a cross-motion for a declaratory judgment. Joshire has also filed a cross-motion to dismiss the Amended Complaint. This Court has subject matter jurisdiction over this matter, Civil Action No. 97–4572, pursuant to 28 U.S.C. § 1331, federal question jurisdiction.[2]

Before it was joined as a party in Civil Action No. 97–4572, Joshire had filed a complaint in the Superior Court of New Jersey, Burlington County, Chancery Division, seeking an order interpreting the restrictive covenant and enjoining Assisted Living from developing the property. Pursuant to 28 U.S.C. §§ 1441 and 1443,[3] Assisted Living removed the state court action to this Court,

---

1. The Fair Housing Act provides, in relevant part:

 [I]t shall be unlawful ... [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
 (A) that buyer or renter,
 (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
 (C) any person associated with that buyer or renter[; or] [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
 (A) that person; or

 (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
 (C) any person associated with that person.
 42 U.S.C. § 3604(f).

2. Section 1331 provides:

 The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
 28 U.S.C. § 1331.

3. Section 1441 provides:

 Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United

where it was docketed as Civil Action No. 98–5301, alleging that this Court had original jurisdiction over the matter, pursuant to 28 U.S.C. §§ 1331, 1443. Joshire filed a timely motion to remand the case to the Superior Court of New Jersey.

Prior to oral argument on the pending motions and cross-motions, the parties agreed to enter into a Stipulation which settled the bulk of their disputes, submitting to this Court for resolution the narrow issue of the interpretation of the restrictive covenant and, assuming the covenant bars the construction of the proposed assisted living facility, whether the enforcement of the covenant would violate the Fair Housing Act.[4] As noted above, I hold that the clear and unambiguous terms of the restrictive covenant do not prohibit the construction of the proposed assisted living facility. Accordingly, I shall dismiss as moot Assisted Living's motion to modify the preliminary injunction. I shall also deny Moorestown's motion for a declaratory judgment, and dismiss as moot Joshire's motion to remand and cross-motion to dismiss the Amended Complaint. Moreover, in accordance with paragraph seven of the Stipulation of the parties, filed December 22, 1998, I shall order Defendant, Moorestown Planning Board, to grant ALA final site plan approval.[5]

## I. BACKGROUND

The facts and procedural history giving rise to ALA's FHA claims against Moorestown are set forth in detail in this Court's March 19, 1998, Opinion, *Assisted Living I*, 996 F.Supp. 409 (D.N.J.1998), and, therefore, shall only be summarized below.

On May 3, 1996, LCM obtained a certificate of need from the New Jersey Department of Health, authorizing the construction of an assisted living facility[6] anywhere in Burlington County. *See Assisted Living I*, 996 F.Supp. at 415. In mid–1996, LCM purchased a 14.75 acre parcel of land, located in Moorestown Township, Burlington County, at the intersection of Garwood and Westfield Roads. *See id.* at 416. Approximately 11.2 acres of the parcel are encumbered by a conservation easement in favor of the Township. *See id.* The remaining 3.55 acres of the parcel are encumbered by a restrictive covenant, which provides, in relevant part:

Declarant[s, Joseph and Margaret Stow,] desire[ ] to provide for the preservation of the above said lands and to limit the development thereof, . . . [t]he above described lands and premises shall not be further subdivided *EXCEPT* that a two lot residential subdivision shall be permitted, subject to subdivision approval by the Township. . . .

*See* Moorestown Brief in Support of Cross-Motion for Declaratory Judgment ("Moorestown Brief"), Exh. M (Declaration of Covenants and Restrictions, recorded Oct. 11,

---

States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . .

28 U.S.C. § 1441(a). Section 1443 provides:

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

28 U.S.C. § 1443.

4. The Stipulation of the parties includes the settlement of Joshire's action against Assisted Living, Civil Action No. 98–5301. *See* Stipulation of the Parties, ¶ 2 (filed Dec. 22 1998) (hereinafter, "Stipulation"). Accordingly, on December 22, 1998, the Court entered an order pursuant to Rule 41.1(b) of the Local Civil Rules dismissing Civil Action No. 98–5301. *See* L. Civ. R. 41.1(b) (notice of settlement).

5. Paragraph seven of the Stipulation states, in relevant part:

In the event the Court decides in favor of ALA with respect to claims regarding the [restrictive covenant], the Court shall Order the Moorestown Planning Board to grant ALA final site plan approval. . . .

*See* Stipulation, ¶ 7 (emphasis omitted).

6. For a detailed definition of "assisted living facility," see *Assisted Living I*, 996 F.Supp. at 415 (¶ 12).

1984 (hereinafter, the "restrictive covenant" or "covenant")).

On or about September 17, 1996, ALA submitted an application to the Planning Board for the construction of an assisted living facility on the 3.55 acre parcel of land not covered by the conservation easement (hereinafter, the "property"). *See Assisted Living I*, 996 F.Supp. at 416. At the time ALA made the application to the Planning Board, the property was conditionally zoned for the use proposed by ALA. *See id.* at 417. While ALA's application was still pending before the Planning Board, the Township rezoned the property, effectively barring ALA's proposed use. *See id.* at 418.

After exploring and exhausting its opportunities to purchase an alternative site for the assisted living facility, on September 4, 1997, Assisted Living filed a complaint in this Court. The complaint alleged:

> [T]hat Ordinance No. 1806–97 violates the Fair Housing Act (the "FHA"), 42 U.S.C. §§ 3601 *et seq.*, that Defendants have intentionally discriminated against the handicapped and "interfere[d] with persons having aided or encouraged other persons in the exercise or enjoyment of rights" protected by the FHA, and that Defendants have failed to make a reasonable accommodation to the handicapped. Plaintiffs also allege violations of the Equal Protection and Due Process clauses of the United States and New Jersey Constitutions. Finally, Plaintiffs allege that Defendants improperly restrict the use of private property in violation of the New Jersey Constitution and the New Jersey Municipal Land Use Law, N.J.S.A. 40:55D–1 *et seq.*

*See Assisted Living I*, 996 F.Supp. at 422.

On November 21, 1997, Assisted Living moved for a preliminary injunction in this Court. *See id.* Moorestown crossmoved to dismiss the complaint and/or for summary judgment. *See id.* at 440–41. On December 11 and 17, 1997, this Court heard testimony on the motion for a preliminary injunction. *See id.* at 422.

After determining that Assisted Living had met its burden of showing a likelihood of success on the merits and the probability of irreparable harm, and had satisfied the other criteria which must be met to obtain injunctive relief, on March 19, 1998, this Court entered a preliminary injunction in favor of Assisted Living. *See id.* at 438–41. I defined the scope of the injunction as follows:

> The reasonable accommodation[,as required by § 3602(b) of the FHA, and] necessary to afford [Assisted Living] equal opportunity to use and enjoy dwelling, ... is to exempt [Assisted Living] from section 1 and section 2 of Ordinance No. 1806–97.... This relief will exempt [Assisted Living] from the requirements that the proposed assisted living facility be located within an existing sanitary sewer service area, as shown in the Township's approved Wastewater Management Plan and that the proposed assisted living facility connect to the Township sanitary sewer system, and will allow [Assisted Living's]' proposed use to be conditionally allowable in the R–1 zone. This is the accommodation [Assisted Living] proved was reasonable and necessary to afford them equal housing opportunities. Defendants could not show otherwise. With that relief, the Planning Board will be able to evaluate and administer [Assisted Living's] plans to connect to the Township's sewer system or its plans to construct a septic system on Lots 1 and 2, and will still be able to apply all other applicable local zoning standards to ALA and LCM's application and eventual construction.
>
> The proper parties to be enjoined are those parties who were, have been, or will be involved in the evaluation, passage, enforcement, and promulgation of the requirements that the proposed assisted living facility be located within an existing sanitary sewer service area, as shown in the Township's approved Wastewater Management Plan and that the proposed assisted living facility connect to the Township sanitary sewer system, and those parties involved in the application of the standards for determining conditional uses in the R–1 zone. The proper parties to be enjoined are the Township, the Zoning Board, and the Planning Board.

*See Assisted Living I*, 996 F.Supp. at 440.

Subsequently, on April 21, 1998, ALA filed an application for preliminary and final site

plan approval with the Planning Board. *See* Moorestown Brief, Exh. F. Shortly thereafter, on May 28, 1998, the parties settled the litigation, and the case was dismissed without prejudice. *See* Order of the Court (filed May 28, 1998). The settlement was reduced to writing and signed by the parties on July 27, 1998. *See* Moorestown Brief, Exh. C (Settlement Agreement, dated July 27, 1998).

In late September, 1998, I received a series of letters from counsel for the parties. First, on September 25, 1998, I received a letter from, Dennis P. Talty, Esq., counsel for the Planning Board. *See* Letter to the Court from Dennis P. Talty, Esq. (dated Sept. 25, 1998). Mr. Talty's letter informed me that on September 24, 1998, the Planning Board had granted ALA "preliminary site plan approval and conditional use approval subject to conditions[, and] denied final approval without prejudice due to an outstanding issue of State Law involving the interpretation and effect of the Deed Restriction recorded of record against the [property]." *See id.*

On the same day, I received a letter from Steven C. Rother, Esq., counsel for Assisted Living, purporting to "clarify representations made to [me] by Mr. Talty...." *See* Letter to the Court from Steven C. Rother, Esq. (dated Sept. 25, 1998). Mr. Rother informed me that:

> By the time we arrived at the [September 24, 1998, Planning Board] meeting there were approximately five conditions which required some adjustment in order to be acceptable to my client and one which was a "deal breaker". [sic] We were able to negotiate the former to my client's satisfaction. The difficulty, and the issue which concerns Your honor, is a condition that required my client to petition the Superior Court, Law Division, for an interpretation of a certain deed restriction.... I suggested that the condition be modified to allow me to seek relief from Your Honor.... When I made it clear that I would not seek relief in state court, the [Planning] board voted to approve the conditional use and preliminary site plan approval.... The above ... is just one of many [actions] taken by the Board and Township

to delay and "stonewall" the efforts of my client.

*See id.* Mr. Rother further informed me that he "was in the process of preparing motion papers to address the[se] issues...." *Id.*

On September 28, 1998, Mr. Rother sent me another letter in which he directed my attention to a portion of my Opinion of March 19, 1998. *See* Letter to the Court from Steven C. Rother (dated Sept. 28, 1998); *see also Assisted Living I*, 996 F.Supp. at 434 (restating the legislative intent of the FHA to prohibit "discrimination against those with handicaps [through] ... special requirements [imposed by] ... restrictive covenants...."). Mr. Rother intimated that the Court had already decided the issue of the "restrictive covenant," and therefore, ALA need not petition the state court to do so. *Cf.* Letter to the Court from Steven C. Rother (dated Sept. 28, 1998).

On October 1, 1998, I received a lengthy letter from Mr. Talty "set[ting] out the position of the ... Planning Board with regard to the issue [of the restrictive covenant]." *See* Letter to the Court from Dennis P. Talty, Esq. (dated Oct. 1, 1998). Mr. Talty contended that it was the Planning Board's position that I had not resolved any issues relating to the restrictive covenant in my Opinion of March 19, 1998. *See id.* In addition, Mr. Talty informed me that, based on *Soussa v. Denville Township Planning Bd.*, 238 N.J.Super. 66, 568 A.2d 1225 (App.Div. 1990), the Planning Board was without authority to grant final site approval in the event that construction of the proposed assisted living facility violated the restrictive covenant. *See* Letter to the Court from Dennis P. Talty, Esq. (dated Oct. 1, 1998). Regarding the Planning Board's refusal to allow ALA to petition this Court for an interpretation of the restrictive covenant, Mr. Talty further wrote that:

> It was my opinion that the issue of the Deed Restriction is an issue of State Law not decided by Your Honor. Since Your Honor only had limited jurisdiction remaining after the settlement and this was not in violation of the [injunction] or Your Honor's Opinion, it was not appropriate to

provide jurisdiction to Your Honor where you did not already have same.

*See id.*

In response to Mr. Talty's letter of October 1, 1998, Mr. Rother sent me a letter dated October 5, 1998. *See* Letter to the Court from Steven C. Rother, Esq. (dated Oct. 5, 1998). Mr. Rother wrote:

It is [Assisted Living's] contention that despite the [preliminary injunction] and Settlement Agreement, the Defendants continue to impose obstacles and delay the approval process in an attempt to kill the project. The [Planning Board and Township] are presently attempting to delay the project in two respects: (1) causing [ALA] needless litigation in the Law Division of [the] Superior Court[,] and (2) refusing to process "without delay" the Waste Water Management Plan.

*See id.*

To address the issues raised by the letters from counsel, on October 9, 1998, I conducted a telephone conference call on the record with all counsel. *See* Letter of the Court to All Counsel of Record (dated Oct. 13, 1998). During the conference call, I informed counsel that I had not addressed or decided any questions relating to the meaning or application of the restrictive covenant in my earlier opinion. *See Assisted Living I*, 996 F.Supp. 409.[7] Counsel for the defendants argued that any resolution of the issues raised by the restrictive covenant should involve the residents of the Joshire Estates subdivision, because they were the members of the public who directly benefitted from the covenant. *See* Transcript (dated Oct. 9, 1998). Consequently, counsel for Assisted Living made an oral application for leave to file an amended complaint to assert a cause of action under the FHA relating to the restrictive covenant, and to join the Joshire Homeowners Association as a defendant. *See id.* After hearing no opposition from the defendants, I granted Assisted Living's application to amend the complaint and restored the case to the active

docket. *See* Order of the Court (filed Oct. 13, 1998).

While Assisted Living and Moorestown were disputing whether this Court had previously decided the meaning and application of the restrictive covenant, Joshire had filed a complaint in the Superior Court of New Jersey, Burlington County, Chancery Division, seeking an order enjoining Assisted Living, "and any successors-in-title ... from utilizing or otherwise developing the [property] as more than two (2) single family residential dwellings." *See* Notice of Removal (filed nov. 19, 1998), Exh. A (Joshire Complaint, filed Sept. 28, 1998). On November 16, 1998, Assisted Living attempted to remove Joshire's state court action. *See* Notice of Motion for Removal (filed nov. 16, 1998). Finding the motion procedurally flawed under the removal statute, 28 U.S.C. § 1446, I dismissed the motion for removal without prejudice. *See* Order of the Court (filed Nov. 20, 1998). On November 20, 1998, Assisted Living filed a Notice of Removal, alleging that this Court had original jurisdiction over the matter, because the action arose under the FHA, 42 U.S.C. § 3617, and pursuant to 28 U.S.C. §§ 1331, 1443. *See* Notice of Removal (filed Nov. 20, 1998); *see also Joshire Homeowners Assoc. v. Stow, et al.*, Civil Action No. 98–5301(SMO).

On October 19, 1998, Assisted Living filed an Amended Complaint in this Court, joining Joshire as a defendant and asserting a cause of action for violation of the FHA based upon the restrictive covenant. *See* Amended Complaint (filed Oct. 19, 1998). On November 10, 1998, Assisted Living filed a motion to modify the preliminary injunction entered by this Court on March 19, 1998. *See* Notice of Motion to Modify Preliminary Injunction (filed Nov. 10, 1998). Assisted Living sought to enlarge the scope of the preliminary injunction to do the following: (1) enjoin the Defendants "from enforcing the terms of a restrictive covenant dated October 11, 1984 ... [;]" (2) direct Moorestown "to issue a construction permit forthwith in order that the Plaintiffs may commence construction of

---

**7.** Although the restrictive covenant is identified in my earlier opinion, 996 F.Supp. at 416 (¶ 18), and discussed in connection with the analysis of Pullman Abstention, *id.* at 430–31(¶ 6), at no time did I interpret the language of the covenant or decide whether it precluded the construction of the assisted living facility on the property.

the proposed assisted living residence[;]" and (3) enjoin the "Defendants, their agents, employees, and all other persons in active concert or participation ... from interfering with the development, construction and operation of the proposed assisted living residence." *See* Assisted Living's Form of Order (submitted Nov. 10, 1998). Moorestown opposed the motion.

On November 30, 1998, Moorestown filed a cross-motion for a declaratory judgment, seeking a declaratory judgment determining that: (1) the Court does not have subject matter jurisdiction to interpret the meaning and scope of the restrictive covenant; (2) the Court must abstain from hearing the issues raised in the Amended Complaint; (3) Moorestown did not violate the preliminary injunction; (4) Moorestown did not breach the Settlement Agreement; (5) the restrictive covenant lawfully bars the proposed facility; and (6) upholding the Planning Board's interpretation of the restrictive covenant in its September 24, 1998, resolution. *See* Moorestown's Notice of Cross–Motion for Declaratory Judgment (filed Nov. 30, 1998).

On November 30, 1998, Joshire also filed a motion to remand its action against Assisted Living to the Superior Court of New Jersey, Burlington County, Chancery Division. *See* Joshire's Notice of Motion to Remand (filed Nov. 30, 1998). Joshire contends that remand is appropriate for the following reasons: (1) removal was untimely and procedurally defective, because Assisted Living's notice of removal was filed after the expiration of the 30 day removal period; (2) "no genuine basis exists in federal law to justify the removal," because Joshire's attempt to enforce the restrictive covenant cannot be construed as a violation of the FHA; (3) Assisted Living has "an adequate forum in the Superior Court to assert their Title VIII claims[;]" and (4) the Court should abstain. *See* Joshire's Notice of Motion to Remand (filed Nov. 30, 1998); *see also* Joshire's Brief in Support of Motion to Remand and to Dismiss (filed Nov. 30, 1998).

In opposition to Assisted Living's motion to modify the preliminary injunction, Joshire filed a cross-motion to dismiss the Amended Complaint as it related to Joshire. *See* Joshire's Brief in Support of Motion to Remand and to Dismiss (filed Nov. 30, 1998). Specifically, Joshire contends: (1) that the state forum can adequately resolve Assisted Living's FHA claims; (2) that "the Anti–Injunction Act[, 28 U.S.C. § 2283,] prohibits the entry of injunctive relief enjoining the state [court] proceeding[;]" and (3) that the Abstention Doctrine requires the "Court to abstain from proceeding in a parallel action to the Superior Court action where Congress has bestowed concurrent jurisdiction in the state and federal courts." *See* Joshire's Notice of Motion to Dismiss (filed Nov. 30, 1998).

Subsequent to the filing of these motions and cross-motions, on December 18, 1998, the parties informed the Court that they had "resolve[d] the claims pending in [this] ... matter, as well as the State Court matter which has been removed to Federal Court." *See* Letter to the Court from Dennis P. Talty, P.C. (dated Dec. 18, 1998). On December 22, 1998, the parties filed a Stipulation "for the purpose of submitting for adjudication the issue of the validity of a certain Declaration of Covenants and Restriction, while settling the remaining claims which have been made in this matter[, Civil Action No. 97–4572,] and a related case, ... [Civil Action No. 98–5301]." *See* Stipulation, Preamble (filed Dec. 22, 1998). The Stipulation states, in relevant part:

> The claims relating to the applicability and validity of the [restrictive covenant] shall be submitted to the Court for a decision based upon the pleadings and moving papers submitted. All parties agree that the Court's decision shall be final and no appeals shall be taken, nor shall any Motions for Reargument be filed.... In the event the Court decides in favor of ALA with respect to claims regarding the [restrictive covenant], the Court shall order the [Planning Board] to grant ALA final site plan approval[; and] ALA shall have the right to apply for an "at risk" building permit which application shall be granted....

*See* Stipulation, ¶¶ 1, 7–8 (emphasis omitted). The court heard oral argument on the issue

of the restrictive covenant on December 22, 1998. *See* Transcript (dated Dec. 22, 1998).

As a result of the Stipulation of the parties, the issues raised by Assisted Living's motion to modify the preliminary injunction and Moorestown's cross-motion for a declaratory judgment have been narrowed considerably. In addition, the Stipulation renders moot Joshire's motion to remand and cross-motion to dismiss the amended complaint.

## II. DISCUSSION

■ In resolving the sole remaining issue posed by Assisted Living's motion and Moorestown's cross-motion, I must decide the following questions: (1) does the restrictive covenant bar Assisted Living's construction of an assisted living facility on the property; and (2) if so, would enforcement of the restrictive covenant against Assisted Living violate the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* The essence of the dispute over the meaning of the restrictive covenant can be summarized as follows: (1) Moorestown contends that the restrictive covenant was intended to restrict *all* development with the exception of a twolot subdivision; (2) Assisted Living contends, to the contrary, that the restrictive covenant does not prevent all development of the property, rather, it only proscribes further subdivision of the property, and the proposed assisted living facility does not constitute a subdivision.

I conclude that the restrictive covenant cannot reasonably be construed to bar Assisted Living's contemplated construction of an assisted living facility on the property. Therefore, because the restrictive covenant does not prohibit the construction of the proposed assisted living facility, I need not address the question of whether the enforcement of the restrictive covenant would violate the FHA. Accordingly, Assisted Living's motion to modify the preliminary injunction to enjoin enforcement of the restrictive covenant shall be dismissed as moot; and Moorestown's cross-motion for a declaratory judgment shall be denied.

### A. The Legal Standard Governing Construction of Restrictive Covenants Under New Jersey Law

■ As Judge Bissell pointed out in *Gibbs v. United States,* "New Jersey adheres to the minority view which treats an equitable servitude as a contract right, not a property right. Thus, in New Jersey, an equitable servitude creates no possessory interest in the burdened land. The burden imposed is enforceable only as a contract right." *Gibbs v. United States,* 1997 WL 882393, at *3 (D.N.J. Aug.13, 1997), *rev'd on other grounds,* 161 F.3d 242 (3d Cir.1998) (citing *McComb v. Hanly,* 132 N.J.Eq. 182, 26 A.2d 891 (1942) (cited with approval in *Homann v. Torchinsky,* 296 N.J.Super. 326, 334, 686 A.2d 1226 (App.Div.1997))); *see also Weinstein v. Swartz,* 3 N.J. 80, 85–86, 68 A.2d 865 (1949) (stating that "[a] restrictive covenant is a contract"). Therefore, because restrictive covenants are contracts, the well-established rules of contract construction apply. *See Homann,* 296 N.J.Super. at 334, 686 A.2d 1226.

■ "The polestar of contract construction is to find the intention of the parties as revealed by the language used by them." *Id.* (citing *Jacobs v. Great Pacific Century Corp.,* 104 N.J. 580, 582, 518 A.2d 223 (1986)) (additional citations omitted). "[T]he language ... must be interpreted in accord with justice and common sense." *Id.* (citing *Krosnowski v. Krosnowski,* 22 N.J. 376, 387, 126 A.2d 182 (1956)). As the New Jersey Supreme has explained:

> In the quest for the common intention of the parties to a contract the court must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain. An agreement must be construed in the context of the circumstances under which it was entered into and it must be accorded a rational meaning in keeping with the express general purpose.

*Homann,* 296 N.J.Super. at 334, 686 A.2d 1226 (quoting *Tessmar v. Grosner,* 23 N.J. 193, 201, 128 A.2d 467 (1957)) (additional citations omitted).

■ "Whether a [contract provision or] term is clear or ambiguous is a question of law." *Nester v. O'Donnell,* 301 N.J.Super. 198, 210, 693 A.2d 1214 (App.Div.1997) (quot-

ing *Kaufman v. Provident Life and Cas. Ins. Co.,* 828 F.Supp. 275, 282 (D.N.J.1992)) (additional alteration omitted). "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations." *Id.* (quoting *Kaufman,* 828 F.Supp. at 283). "A writing is interpreted as a whole[;]" *Nester,* 301 N.J.Super. at 210, 693 A.2d 1214 (quoting *Barco Urban Renewal Corp. v. Housing Auth. Of Atlantic City,* 674 F.2d 1001, 1009 (3d Cir. 1982)), and the Court "should not torture the language of a contract to create ambiguity." *Nester,* 301 N.J.Super. at 210, 693 A.2d 1214 (quoting *Stiefel v. Bayly, Martin and Fay, Inc.,* 242 N.J.Super. 643, 651, 577 A.2d 1303 (App.Div.1990)).

▮▮▮▮ A rule of strict construction is applied to restrictive covenants, "unless such a rule would defeat the obvious purpose of the covenant." *See Homann,* 296 N.J.Super. at 335, 686 A.2d 1226. "Insofar as covenants tend to curtail or hinder the full use of land, the public policy in favor of alienability of land comes in to urge strict construction[.]" 9 *Powell on Real Property* § 60.05 (Matthew Bender 1998).

▮▮▮▮ Words must be given their ordinary meaning. *See id.* "Where the terms . . . are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." *Id.* "Nor may the courts remake a contract better than the parties 'themselves have seen fit to enter into, or alter it for the benefit of one party to the detriment of the other.' " *Id.* (quoting *James v. Federal Ins. Co.,* 5 N.J. 21, 24, 73 A.2d.720 (1950)).

### B. The Terms of the Restrictive Covenant Are Clear and Unambiguous

Applying these well-established principles of contract interpretation to the Declaration of Covenants and Restrictions, I conclude that the terms of the restrictive covenant are clear and unambiguous. The restrictive covenant states, in relevant part:

Declarant[s, Joseph and Margaret Stow,] desire[ ] to provide for the preservation of the above said lands and to limit the development thereof, . . . [t]he above described lands and premises shall not be further subdivided *EXCEPT* that a two lot residential subdivision shall be permitted, subject to subdivision approval by the Township. . . .

*See* Moorestown Brief, Exh. M. Resolution of the parties' dispute depends upon the meaning of the terms "development," "subdivide," and "subdivision." To be precise, the resolution of this dispute turns upon whether the meaning of the term "subdivision" is coterminous with the meaning of the term "development."

In interpreting the "ordinary meaning" of these terms, *see Shadow Lake Village Condo. Ass'n, Inv. v. Zampella,* 238 N.J.Super. 132, 139, 569 A.2d 288 (App.Div.1990) (quoting *Matter of Schedule of Rates for Barnert Mem. Hosp.,* 92 N.J. 31, 40, 455 A.2d 469 (1983)), I conclude that the terms "subdivision" and "development" do not mean the same thing. "Development" is a general term, whose meaning in ordinary usage is "convert[ing] a tract of land to a specific purpose, as by building extensively." *Webster's II New Riverside Dictionary* 370 (1994) (internal alterations omitted). "Subdivision," by contrast, is a specific form of development, meaning "the act or process of . . . dividing land into lots." *Id.* at 1153 (internal alterations omitted).

These common definitions have been incorporated into the New Jersey Municipal Land Use Law ("MLUL"), N.J. Stat. Ann. § 40:55D–1 *et seq.* (West 1998). In light of Moorestown's concerns that the proposed assisted living facility is incompatible with the neighborhood scheme, *see* Moorestown Brief at 33, the Court's consideration of the MLUL's definitions of "development" and "subdivision" is particularly appropriate. The MLUL defines "development" as:

[T]he division of a parcel of land into two or more parcels, the construction, reconstruction, conversion, structural alteration, relocation or enlargement of any building or other structure, or of any mining excavation or landfill, and any use or change in the use of any building or other structure, or land or extension of use of land, for which permission may be required pursuant to this act.

*See* N.J. Stat. Ann. § 40:55D–4. "Subdivision" is defined as:

[T]he division of a lot, tract or parcel of land into two or more lots, tracts, parcels or other divisions of land for sale or development. . . .

*See* N.J. Stat. Ann. § 40:55D–7. As I noted with regard to the common dictionary definitions of these terms, so I note again that "development" has a broad, sweeping meaning, while "subdivision" concerns a specific, limited type of development, namely, the division of land into separate lots.

 In New Jersey, it is a well-settled principle of contract interpretation that, in construing the contract as a whole, specific terms or clauses control general terms or clauses. *See Dontzin v. Myer,* 301 N.J.Super. 501, 507, 694 A.2d 264 (App.Div.1997); *Burley v. Prudential Ins. Co. of America,* 251 N.J.Super. 493, 500, 598 A.2d 936 (App. Div.1991) (citing *Farnsworth on Contracts*); *see also Bauman v. Royal Indemnity Co.,* 36 N.J. 12, 22, 174 A.2d 585 (1961) (citing *Corbin on Contracts*); *Mayfair Supermarkets, Inc. v. Acme Markets, Inc.* Civ. A. No. 87–3994(CSF), 1989 WL 32133 (D.N.J. Apr.3, 1989); *accord Capitol Bus Co. v. Blue Bird Coach Lines, Inc.,* 478 F.2d 556, 560 (3d Cir.1973) (construing Pennsylvania law, citing the *Restatement* and *Williston on Contracts,* and stating that "[a] contract is to be considered as a whole and, if possible, all its provisions should be given effect[, with] the specific [provisions] control[ing] the general[.]"). Applying this principle to the restrictive covenant, the meaning of the term "subdivision" controls the meaning of the term "development." In the restrictive covenant, the Stows stated an intention "to limit the development . . ." of the property. *See* Moorestown Brief, Exh. M. In the actual restriction clause, the Stows clarified their express intention by stating the type of development they intended to restrict, specifically, further subdivision of the property. *See id.* This limit on subdivision is further qualified by the exception clause in the restriction. *See id.* (The property "shall not

be further subdivided *EXCEPT* that a two lot residential subdivision shall be permitted . . .").

Thus, construing the restrictive covenant to give effect to all of its terms leads to the conclusion that the covenant only prohibits a specific type of further development, namely, subdivision of the property into more than two residential lots. For example, the covenant prohibits the owners of the property from dividing the property into seven half acre residential lots, or fourteen quarter acre residential lots. Consequently, development of the property, which does not "further subdivide" the property, is not prohibited by the restrictive covenant.

Applying the definition of "subdivision" to the facts of this case, it is undisputed that Assisted Living's intended use for the property is not a "subdivision." *See Assisted Living I,* 996 F.Supp. at 417. Construction of the assisted living facility will not result in "a division of [the property] into two or more lots, tracts or parcels . . . for sale or development." *See* N.J. Stat. Ann. 40:55D–7; *see also Webster's Dictionary* at 1153. On the contrary, the proposed assisted living facility will result in the development of the entire 3.55 acre property, thus precluding "division of [the property] into two or more lots . . ." *See id.; see also Assisted Living Assocs.,* 996 F.Supp. at 416 (¶ 19).

## C. *Consideration of the Extrinsic Evidence*

Moorestown contends that this construction of the restrictive covenant conflicts with the common intention of the parties to the restrictive covenant, considering the "circumstances[ ] and objects they were trying to attain" at the time the restrictive covenant was created. *See* Moorestown Brief at 33; *see also Homann,* 296 N.J.Super. at 334, 686 A.2d 1226. I respectfully disagree. Moreover, a review of the exhibits submitted by Moorestown demonstrates the correctness of my conclusion.[8]

---

8. Because I have already determined that the terms of the restrictive covenant are clear and unambiguous, I need not consider extrinsic evidence of the parties' intentions in construing the

covenant. *Homann,* 296 N.J.Super. at 335, 686 A.2d 1226 (stating that "the courts must enforce [clear and unambiguous] terms as written"); *see also 9 Powell on Real Property* § 60.05. I include

First, Moorestown directs this Court's attention to the minutes of a 1984 meeting of the Planning Board, at which the restrictive covenant was proposed as a condition to the approval of the Joshire Estates subdivision. *See* Moorestown Brief, Exh. K. The minutes state, in relevant part:

> Mr. Atwood made a motion to approve the application with conditions and adjustments the Board and applicant discussed. Mrs. Yanai seconded the motion. Mrs. O'Meara asked if Mr. Martin would be willing to lock in his suggestion that not more than one house could be built on the remainder of the property. Mr. Martin agreed. Mr. Atwood and Mrs. Yanai accepted the addition to the motion.... The vote was five to three in favor of the motion.

*See id.* Given that the purpose of the meeting of the Planning Board was to consider approval of a subdivision plan, it is clear that the amendment to the motion by Mrs. O'Meara was intended to prevent the further subdivision of the property. Indeed, the Planning Board's desire to prevent division of the property into smaller lots is demonstrated by the members' concern about the Township's *Mt. Laurel II* obligations. *See Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel,* 92 N.J. 158, 456 A.2d 390 (1983) (holding, *inter alia,* that municipalities may not use residential lot size requirements to prevent construction of low to moderate income housing). Furthermore, if the Planning Board's intent was to restrict all further development of the property, presumably, the members would have sought a dedication or conservation easement, both of which were involved with the approval of the Joshire Estates subdivision. *See* Moorestown Brief, Exh. K; *see also Assisted Living Assocs.,* 996 F.Supp. at 416 (¶ 18).

Second, the master deed creating the Joshire Estates subdivision contains the following language in the General Notes section:

> Block 307, Lot 1–B[, being the property at issue,] ... is subject to the restriction ... wherein said tract may only be subdivided

to create one additional lot in the future....

*See* Moorestown Brief, Exh. N (Attachment to Title Ins. Commitment, # 819–204433). The terms of this deed support the Court's conclusion that the restrictive covenant was intended to limit further subdivision of the property, not prevent all future development.

Finally, Moorestown has submitted two certifications which purport to state the common intention of the parties in executing the restrictive covenant. *See* Moorestown Brief, Exhs. I, L. The first is the certification of Dennis Funaro, the Director of the Department of Community Development in the Township of Moorestown, at the time of the creation of the restrictive covenant. *See id.,* Exh. I. The second is the certification of Ronald McLarney, Esq., the attorney who drafted the terms of the restrictive covenant. *See id.,* Exh. L. In their certifications, both Funaro and McLarney, state that, even though the restrictive covenant used the term "subdivision," the intended meaning of the provision was to restrict all future development of the property beyond an additional residence. *See id.,* Exhs. I, L. In addition, both Funaro and McLarney state that more expansive language was not employed because, at the time the covenant was created, the zoning scheme only permitted single-family residential use of the property. *See id.*

I find the Funaro and McLarney certifications unpersuasive and self-serving. They are *post hoc* rationalizations which distort the original language of the restrictive covenant. If the parties to the covenant intended to restrict all future development, they could have easily done so in just those words, without resorting to the circumlocutions they now ask this Court to adopt. Furthermore, I have already concluded that the terms of the restrictive covenant are clear and unambiguous. *See Dontzin v. Myer,* 301 N.J.Super. 501, 694 A.2d 264 (App.Div.1997) (stating that extrinsic evidence is not to be considered to give effect to an alleged intent at variance with the express language of the contract). Construing these unambiguous

---

this discussion of the extrinsic evidence only to illustrate its consistency with the Court's inter-

pretation of the restrictive covenant.

terms to accept the interpretation suggested by Funaro and McLarney, would be tantamount to "remak[ing the restrictive covenant] better than the parties themselves have seen fit to enter into...." *Homann,* 296 N.J.Super. at 336, 686 A.2d 1226; *see also Dontzin,* 301 N.J.Super. at 507, 694 A.2d 264. This I am not permitted to do.

Moreover, these recent certifications are *post hoc* reevaluations of an event thirteen years past. In the face of the clear and unambiguous terms of the restrictive covenant, the express terms must control the outcome of this dispute. To hold otherwise would be contrary to the central public policy furthered by the recording act, namely, that "a buyer of real property should be able to discover and evaluate all of the ... restrictions on the property [from] ... the public record." *See Aldrich v. Schwartz,* 258 N.J.Super. 300, 307, 609 A.2d 507 (App.Div. 1992); *see also* N.J. Stat. Ann. § 46:21–1 (West 1998) (Recording Act); *cf. Palamarg Realty Co. v. Rehac,* 80 N.J. 446, 453, 404 A.2d 21 (1979) (stating that "a court should decide a question of title ... in the way that will best support and maintain the integrity of the recording system").

The recollections of Funaro and McLarney are not part of the public record. A prospective purchaser, searching the title of the property, could not reasonably uncover their proffered interpretation of the restrictive covenant. *See Brescher v. Gern, Dunetz, Davison & Weinstein, P.C.,* 245 N.J.Super. 365, 371–72, 585 A.2d 961 (App.Div.1991) (stating that "[t]he very purpose of the [Recording] Act is to protect those who have made a 'reasonable search of the record title' "). *Security Pacific Finance Corp. v. Taylor,* 193 N.J.Super. 434, 441–42, 474 A.2d 1096 (1984) (stating that the recording act requires only a reasonable search of the public record).

In addition, the defendants' contention at oral argument that the restrictive covenant charged ALA with inquiry notice of the Planning Board minutes is without merit. *See* Transcript (dated Dec. 22, 1998). As a preliminary matter, even assuming that the Planning Board's minutes expressly stated that it intended to restrict all development of the property beyond an additional residence, a reasonable title search would not uncover this intent, because the recording act does not charge a prospective purchaser with knowledge of these minutes, particularly when the minutes were not recorded with or mentioned in the deed containing the restrictive covenant. *Cf. Aldrich,* 258 N.J.Super. at 307, 609 A.2d 507; *see Garden of Memories, Inc. v. Forest Lawn Mem. Park Assoc.,* 109 N.J.Super. 523, 534–35, 264 A.2d 82 (App. Div.1970).

 Furthermore, a prospective purchaser will only be charged with inquiry notice if the recorded instrument contains a "statement or recital" of the existence of another document affecting the property's title. *See Garden of Memories,* 109 N.J.Super. at 534–35, 264 A.2d 82 (citing 4 *American Law of Property,* § 17.28 (1952)). A purchaser of real property is charged with notice "of whatever matters he would have learned by any inquiry which the recitals in the [deed] made it his duty to pursue." *Id.* (citation omitted). A purchaser is put on inquiry notice "where facts are brought to his attention, sufficient to apprise him of the existence of an outstanding title or claim, or surrounding circumstances are suspicious and the party purposefully or knowingly avoids further inquiry." *Friendship Manor, Inc. v. Greiman,* 244 N.J.Super. 104, 108, 581 A.2d 893 (App.Div.1990). "A purchaser who is placed on inquiry notice is chargeable with notice of such facts as might be ascertained by reasonable inquiry." *Id.; see also* 14 *Powell on Real Property,* § 82.02[1] (stating that "the extent of the inquiry necessary to satisfy the burden of investigation must be governed by some standard of reasonableness[,]" considering "those extraneous or secondary facts that, by ordinary human experience, suggest a genuine potential for a defect").

Based on this standard, it is clear that Assisted Living was not charged with inquiry notice of the Planning Board's minutes. First, the restrictive covenant contains no statement or recital which can reasonably be construed to charge Assisted Living with a duty to conduct a further search of the Planning Board's minute book. The restrictive

covenant merely states that any new subdivision must be approved by the Township. *See* Moorestown Brief, Exh. M ("[A] two lot residential subdivision shall be permitted, subject to subdivision approval by the Township of Moorestown"). This term merely restates the requirements of the MLUL. *See e.g.* N.J. Stat. Ann. § 40:55D–37 *et seq.* It does not provide Assisted Living or any other prospective purchaser with " 'clews' which were so easily followed that to have failed to do so charges [prospective purchasers] with [their] own neglect." *See Garden of Memories,* 109 N.J.Super. at 535, 264 A.2d 82 (quoting *Kennedy v. Island Development Co.,* 9 N.J. Misc. 921, 924, 156 A. 233 (Cir.Ct.1931)) (internal quotations omitted); *see also Friendship Manor,* 244 N.J.Super. at 108, 581 A.2d 893. Under Defendants' interpretation, a purchaser of the property, diligently searching the public record, would be charged with inquiry notice of the fact that the restrictive covenant allegedly prohibits that which its unambiguous terms state it does not prohibit.[9] To adopt Defendants' interpretation of the restrictive covenant would not only be unreasonable, but would also violate a central principle of contract interpretation, namely, that clear and unambiguous contract terms must be enforced as written. *Homann,* 296 N.J.Super. at 335, 686 A.2d 1226.

Accordingly, I conclude that the clear and unambiguous terms of the Declaration of Covenants and Restrictions do not prohibit Assisted Living's construction of an assisted living facility on the property. Therefore, because I have so held, I need not consider whether this Court's preliminary injunction, entered pursuant to the FHA, must be modified to enjoin the enforcement of the covenant, or whether the enforcement of the restrictive covenant would violate the FHA.

## III. CONCLUSION

For the reasons set forth above, the motion of Plaintiffs, Assisted Living Associates of Moorestown, L.L.C., and Laurel Construction Management, Inc., to modify this Court's preliminary injunction, entered March 19, 1998, shall be dismissed as moot. In addition, the cross-motion of Defendants, Moorestown Township, Moorestown Township Zoning Board of Adjustment, and Moorestown Township Planning Board, for a declaratory judgment shall be denied. Joshire Homeowners Association's motion to remand and its cross-motion to dismiss the Amended Complaint shall be dismissed as moot. Finally, in accordance with paragraph seven of the Stipulation of the parties, filed December 22, 1998, I shall Order Defendant, Moorestown Planning Board, to grant ALA final site plan approval for the construction of the assisted living facility. The Court shall enter an appropriate order.

## ORDER

This matter having come before the Court on the motion of Plaintiffs, Assisted Living Associates of Moorestown, L.L.C., and Laurel Construction Management, Inc., for modification of this Court's preliminary injunction, entered March 19, 1998, pursuant to 42 U.S.C. § 3601 *et seq.,* and the cross-motion of Defendants, Moorestown Township, Moorestown Township Zoning Board of Adjustment, and Moorestown Township Planning Board, for a declaratory judgment, and the cross-motion of Joshire Homeowners Association to dismiss the Amended Complaint, and the motion of Joshire Homeowners Association to remand Civil Action No. 98–5301 to the Superior Court of New Jersey, Burlington County, Chancery Division, Steven C. Rother, Esq., and A. Alberto Lugo, Esq., appearing on behalf of Plaintiffs, and George J. Botcheos, Esq., and Jeremy D. Countess, Esq., appearing on behalf of Defendant, Moorestown Township, and Peter R. Thorndike, Esq, Ryan & Thorndike, and George J. Botcheos, Esq., appearing on behalf of Defendant, Moorestown Township Zoning Board of Adjustment, and Dennis P. Talty, Esq., Dennis P. Talty, P.C., appearing on behalf of Defendant, Moorestown Township

---

9. I note that this case is factually distinguishable from that of *Aldrich.* In *Aldrich,* a purchaser of real property was held to be bound by a variance, although no reasonable search could have revealed its existence. *Aldrich,* 258 N.J.Super. at 307, 609 A.2d 507. Unlike *Aldrich,* in this case, the issue is not whether a purchaser could have uncovered the restriction, but rather what does the restriction prohibit.

Planning Board, and Henry J. Tyler, Esq., Brandt, Haughey, Penberthy, Lewis & Hyland, appearing on behalf of Defendant, Joshire Homeowners Association; and,

The Court having considered the submissions of the parties, and oral argument having been heard, for the reasons set forth in the Court's Opinion filed concurrently with this ORDER;

IT IS, on this 29th day of December, 1998, hereby ORDERED that the motion of Plaintiffs, Assisted Living Associates of Moorestown, L.L.C., Laurel Construction Management, Inc., to modify the preliminary injunction is DISMISSED as moot; and,

IT IS further ORDERED that the cross-motion of Defendants, Moorestown Township, Moorestown Township Zoning Board of Adjustment, and Moorestown Township Planning Board, for a declaratory judgment is DENIED; and,

IT IS further ORDERED that the cross-motion of Defendant, Joshire Homeowners Association, to dismiss the Amended Complaint is DISMISSED as moot; and,

IT IS further ORDERED that the motion of Plaintiff, Joshire Homeowners Association, to remand Civil Action No. 98–5301 to the Superior Court of New Jersey, Burlington County, Chancery Division, is DISMISSED as moot; and,

IT IS further ORDERED, in accordance with paragraph seven of the Stipulation of the parties, filed December 22, 1998, that Defendant, Moorestown Planning Board, shall grant to Plaintiff, Assisted Living Associates of Moorestown, L.L.C., final site plan approval for the construction of the assisted living facility.